Consolidated Appeal Nos. 25-8013, 26-88, 26-497, and 26-525

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

STATE OF CALIFORNIA, *et al.*,
*Plaintiffs-Appellees*,

v.

UNITED STATES OF AMERICA, *et al.*,
*Defendants*,

WESTERN STATES TRUCKING ASSOCIATION, INC. *et al.*,
*Proposed Defendant-Intervenors and Movant-Appellants*.

———————————

**On Appeal from the U.S. District Court for the
Northern District of California**
No. 4:25-cv-04966-HSG

———————————

## STATE OF CALIFORNIA ET AL.'S
## CONSOLIDATED ANSWERING BRIEF

———————————

ROB BONTA
  *Attorney General of California*
ANNADEL A. ALMENDRAS
DEBORAH SMITH
  *Senior Assistant Attorneys General*
MYUNG J. PARK
DAVID ZAFT
  *Supervising Deputy Attorneys General*

KATHERINE GAUMOND
CAITLAN MCLOON
M. ELAINE MECKENSTOCK
EMMANUELLE S. SOICHET
CECILIA D. SEGAL
  *Deputy Attorneys General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
  455 Golden Gate Ave., Ste. 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3545
  Fax: (415) 703-1107
  Email: cecilia.segal@doj.ca.gov
  *Attorneys for State of California*

*Additional appellees and counsel listed on signature pages*

March 27, 2026

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

STATEMENT OF JURISDICTION ...................................................... 3

STATEMENT OF THE ISSUES ............................................................ 3

STATEMENT REGARDING ADDENDUM ........................................ 4

STATEMENT OF THE CASE ............................................................... 4

    I.     Factual Background ................................................................... 4

    II.    Proceedings Below .................................................................... 7

SUMMARY OF THE ARGUMENT .................................................... 12

ARGUMENT ........................................................................................ 14

    I.     Proposed Intervenors Did Not Establish Entitlement to Intervention as of Right ........................................................... 14

            A.    Proposed Intervenors failed to demonstrate that they have protectable interests in the underlying case that would be impaired by its disposition ............................ 15

                  1.    Proposed Intervenors' asserted economic interests are unrelated to Plaintiff States' claims and can be protected in separate proceedings ........................................................... 16

                  2.    Proposed Intervenors failed to establish that their asserted non-economic interests are protectable under law; their new arguments on appeal are waived and also meritless ................. 26

i

**TABLE OF CONTENTS**
**(continued)**

Page

B.    Proposed Intervenors did not overcome the presumption that the federal government would adequately represent their claimed interests in any event .................................................................. 39

    1.    The federal government's litigation choice to defer a single argument does not rebut the presumption ........................................................ 40

    2.    WSTA Intervenors' adverse relationship to the federal government in *other* contexts does not establish inadequate representation here ...... 45

    3.    Joint Intervenors do not explain how their interests diverge from the federal government's ....................................................... 47

    4.    Joint Intervenors can only speculate that the federal government might reverse course in the future ............................................................. 49

II.    The District Court Did Not Abuse Its Discretion When it Denied Joint Intervenors Permissive Intervention .................. 52

CONCLUSION .......................................................................... 55

STATEMENT OF RELATED CASES ...................................................... 58

ii

# TABLE OF AUTHORITIES

**Page**

CASES

*Akina v. Hawaii*
835 F.3d 1003 (9th Cir. 2016) ......................................22, 23, 24

*Arakaki v. Cayetano*
324 F.3d 1078 (9th Cir. 2003) ..................................21, 40, 43, 49

*Blake v. Pallan*
554 F.2d 947 (9th Cir. 1977) ...............................................31, 49

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*
54 F.4th 1078 (9th Cir. 2022) ................................. 16, 20, 25-26

*California ex rel. Lockyer v. United States*
450 F.3d 436 (9th Cir. 2006) ............................. 35-36, 37, 39, 42

*Californians for Safe & Competitive Dump Truck Transp.*
*v. Mendonca*
152 F.3d 1184 (1998)................................................................20

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*
529 F. Supp. 2d 1151 (E.D. Cal. 2007) .....................................34

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*
647 F.3d 893 (9th Cir. 2011) ..............................................42, 51

*Conservation Law Found. of New England, Inc. v. Mosbacher*
966 F.2d 39 (1st Cir. 1992).................................... 20-21, 46-47

*Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*
642 F.3d 728 (9th Cir. 2011) ..............................................39, 50

*Diamond Alt. Energy, LLC v. EPA*
606 U.S. 100 (2025)......................................................7, 21, 29

iii

# TABLE OF AUTHORITIES
## (continued)

Page

*Drakes Bay Oyster Co. v. Env't Action Comm. of W. Marin*
571 F. App'x 605 (9th Cir. Apr. 29, 2014)............................................43, 47

*Drakes Bay Oyster Co. v. Salazar*
No. 12-cv-06134, 2013 WL 451813 (N.D. Cal. Feb. 4, 2013).............43, 47

*E. Bay Sanctuary Covenant v. Biden*
102 F.4th 996 (9th Cir. 2024) ......................................................15, 20, 51

*Engine Mfrs. Assoc. v. S. Coast Air Quality Mgmt. Dist.*
541 U.S. 246 (2004)................................................................................34

*Forest Conservation Council v. U.S. Forest Serv.*
66 F.3d 1489 (9th Cir. 1995) .................................................................48

*Freedom from Religion Found., Inc. v. Geithner*
644 F.3d 836 (9th Cir. 2011) ................................................9, 15, 39, 47, 51

*Fresno County v. Andrus*
622 F.2d 436 (9th Cir. 1980) .............................................................36, 37

*Fund For Animals, Inc. v. Norton*
322 F.3d 728 (D.C. Cir. 2003)...............................................................48

*Greene v. United States*
996 F.2d 973 (9th Cir. 1993) .................................17, 18, 19, 22, 23, 24, 44

*Halicki Films, LLC v. Sanderson Sales & Mktg.*
547 F.3d 1213 (9th Cir. 2008) ...............................................................31

*Idaho Bldg. & Constr. Trades Council, AFL-CIO v. Inland Pac.*
*Chapter of Associated Builders & Contractors, Inc.*
616 F. App'x 319 (9th Cir. 2015)...........................................................40

*Idaho Farm Bureau Fed'n v. Babbitt*
58 F.3d 1392 (9th Cir. 1995) .................................................................27

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Idaho v. Freeman*
625 F.2d 886 (9th Cir. 1980) ........................................................27

*In re Apple iPhone Antitrust Litig.*
846 F.3d 313 (9th Cir. 2017) ........................................................41

*In re Volkswagen "Clean Diesel" Mtkg., Sales Pracs., & Prods.*
*Liab. Litig.*
959 F.3d 1201 (9th Cir. 2020) ......................................................34

*Indep. Towers of Wash. v. Washington*
350 F.3d 925 (9th Cir. 2003) ........................................................45

*League of United Latin Am. Citizens v. Wilson (LULAC)*
131 F.3d 1297 (9th Cir. 1997) ........................................41, 46, 50

*Montgomery v. Rumsfeld*
572 F.2d 250 (9th Cir. 1978) ........................................................54

*Motor & Equip. Mfrs. Ass'n, Inc. v. EPA (MEMA I)*
627 F.2d 1095 (D.C. Cir. 1979) ...............................................4-5, 33

*Motor & Equipment Mfrs. Ass'n v. Nichols*
142 F.3d 449 ........................................................................22, 34

*Pennsylvania v. President United States of Am.*
888 F.3d 52 (3d Cir. 2018) ...........................................................36

*Perry v. Proposition 8 Off. Proponents*
587 F.3d 947 (9th Cir. 2009) ...........................40, 43, 52, 53, 54

*Perry v. Schwarzenegger*
630 F.3d 898 (9th Cir. 2011) ..........................................18, 27, 35

*Prasad v. INS*
47 F.3d 336 (9th Cir. 1995) ..........................................................53

## TABLE OF AUTHORITIES
### (continued)

Page

*Prete v. Bradbury*
   438 F.3d 949 (9th Cir. 2006) ......................................................44, 46, 47, 49

*S. Cal. Edison Co. v. Lynch*
   307 F.3d 794 (9th Cir. 2002) ....................................................................38

*Sagebrush Rebellion, Inc. v. Watt*
   713 F.2d 525 (9th Cir. 1983) ..............................................................27, 50

*Sierra Club v. EPA*
   995 F.2d 1478 (9th Cir. 1993) ............................................................27, 33

*South Carolina v. Baker*
   485 U.S. 505 (1988)....................................................................................8

*Spangler v. Pasadena City Bd. of Educ.*
   552 F.2d 1326 (9th Cir. 1977) ....................................................................52

*Stringfellow v. Concerned Neighbors in Action*
   480 U.S. 370 (1987)..................................................................................54

*Sw. Ctr. for Biological Diversity v. Berg*
   268 F.3d 810 (9th Cir. 2001) ......................................................15, 43, 50

*Sweet v. Cardona*
   121 F.4th 32 (9th Cir. 2024) ......................................................................21

*United States v. Alisal Water Corp.*
   370 F.3d 915 (9th Cir. 2004) ......................................................18, 20, 38

*United States v. Brown*
   381 U.S. 437 (1965)...............................................................................7-8

*United States v. City of Los Angeles*
   288 F.3d 391 (9th Cir. 2002) ..........................................22, 24, 38, 44, 52

*United States v. Metro. St. Louis Sewer Dist.*
   569 F.3d 829 (8th Cir. 2009) ......................................................17, 19, 38

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*
 834 F.3d 562 (5th Cir. 2016) ......................................................36

*Washington v. U.S. Food & Drug Admin.*
 108 F.4th 1163 (9th Cir. 2024) .....................................................3

*W. Watersheds Project v. Haaland*
 22 F.4th 828 (9th Cir. 2022) ...................................18, 41, 48, 54

*Westlands Water Dist. v. United States*
 700 F.2d 561 (9th Cir. 1983) ......................................................38

*Wilderness Soc'y v. U.S. Forest Serv.*
 630 F.3d 1173 (9th Cir. 2011) .................................25, 45, 47, 48

*Yniguez v. Arizona*
 939 F.2d 727 (9th Cir. 1991) ......................................................51

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 5, cl. 2.............................................................8

## STATUTES

28 U.S.C.
 § 530D..............................................................................................50
 § 1331................................................................................................3

42 U.S.C.
 § 7507...........................................................................................5, 33
 § 7543............................................................................4, 22, 34, 35
 § 7607............................................................................5, 22, 34

# TABLE OF AUTHORITIES
## (continued)

**Page**

**COURT RULES**

Fed. R. Civ. Proc.
    12(b)(6) ..................................................................................... 41
    24(a)(2) ................................................................................ *passim*
    24(b)............................................................................... 3, 52, 55

Cir. Rule 28-2.6................................................................................. 58

**OTHER AUTHORITIES**

87 Fed. Reg. 14,369 (Mar. 14, 2022)................................................ 34

88 Fed. Reg. 20,688 (Apr. 6, 2023) ................................................ 5, 6

90 Fed. Reg. 642 (Jan. 6, 2025) ........................................................ 5

90 Fed. Reg. 643 (Jan. 6, 2025) ........................................................ 6

7C Wright & Miller's Federal Practice & Procedure § 1904
    (3d ed. 2025) .............................................................................. 12, 38

**INTRODUCTION**

California and ten other States ("Plaintiff States") sued the federal government for its unprecedented and unconstitutional attempt to legislatively annul three preemption waivers previously issued to California under the Clean Air Act. Twenty trade associations, purporting to represent thousands of different members—from car dealers to petroleum refiners to corn farmers to convenience store retailers—appeal the district court's denial of their motions to intervene as defendants.[1] In claiming entitlement to party status, these Proposed Intervenors emphasize this Court's liberal approach to intervention under Federal Rule of Civil Procedure 24. But even under that liberal approach, intervention is not automatic; the Rule's standards must be met.

---

[1] Appellants filed four sets of intervention motions below, organized as follows: (1) American Free Enterprise Chamber of Commerce (AmFree) and twelve corn growers' associations (collectively, "AmFree Movants"); (2) American Fuel & Petrochemical Manufacturers (AFPM), American Petroleum Institute (API), and National Association of Convenience Stores (NACS) (collectively, "AFPM Movants"); (3) Alliance for Automotive Innovation (Alliance) and National Automobile Dealers Association (NADA) (collectively, "Alliance Movants"); and (4) Western States Trucking Association (WSTA) and Construction Joint Air Quality Coalition (CIAQC) (collectively, "WSTA Movants"). The first three sets of proposed defendant-intervenors filed a joint opening brief on appeal; Plaintiff States refer to that group as Joint Intervenors, to the second group as WSTA Intervenors, and to both groups together as Proposed Intervenors.

Proposed Intervenors failed to satisfy Rule 24's standards at the district court, and fail to demonstrate that reversal is warranted here. Specifically, Proposed Intervenors did not establish a right to intervene because they did not show that the predominantly economic interests they asserted are both protectable under law and related to Plaintiff States' claims—as precedent requires—or that such interests would be impeded by the case's disposition. Proposed Intervenors' attempts to shift focus to allegedly non-economic interests on appeal are unpersuasive, if not waived. Separately, Proposed Intervenors failed to overcome the presumption that the federal government would adequately represent them, merely speculating that their interests and litigation positions might diverge.

The district court thus properly denied intervention as of right. And contrary to Joint Intervenors' representations, the court adopted no categorical or novel rule against intervention in doing so; it simply applied settled law to the facts and arguments presented to reach case-specific determinations. This portion of the district court's order should be affirmed.

The district court also properly exercised its discretion to deny permissive intervention (a result WSTA Intervenors do not even contest on appeal), citing the federal government's adequate representation and the risk that Proposed Intervenors' participation would unduly complicate and delay the litigation.

2

Consistent with this Court's precedent, this portion of the district court's order should be dismissed for lack of jurisdiction.

## STATEMENT OF JURISDICTION

Plaintiff States' claims in the case below arise under federal law. 2-ER-140, ¶ 29; 2-ER-164–76, ¶¶ 120-84.[2] The district court therefore has subject-matter jurisdiction over the case under 28 U.S.C. § 1331. Plaintiff States do not dispute Proposed Intervenors' statements as to this Court's jurisdiction, Joint Br. 1; WSTA Br. 1, except that the Court has jurisdiction over the denial of permissive intervention only if it concludes that the district court abused its discretion, *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1171 (9th Cir. 2024).

## STATEMENT OF THE ISSUES

1.  Whether Proposed Intervenors failed to establish a right to intervene under Federal Rule of Civil Procedure 24(a)(2); and

2.  Whether Joint Intervenors' appeal from the denial of permissive intervention should be dismissed because the district court did not abuse its discretion under Federal Rule of Civil Procedure 24(b).

---

[2] ER citations refer to Joint Intervenors' Excerpts of Record. WSTA-ER citations refer to WSTA Intervenors' Excerpts of Record. SER citations refer to Plaintiff States' Supplemental Excerpts of Record.

## STATEMENT REGARDING ADDENDUM

Proposed Intervenors' addenda contain the pertinent authority setting out the rule for intervention in federal civil cases.

## STATEMENT OF THE CASE

### I.   FACTUAL BACKGROUND

On June 12, 2025, Plaintiff States—a group of eleven States, led by California—sued the federal government over its unprecedented attempt, absent administrative or judicial process, to annul three waivers of preemption that the U.S. Environmental Protection Agency (EPA) had granted to California under Section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b). 2-ER-134–37, ¶¶ 4-5, 9-13. Those waivers authorized California to enforce specific updates to its vehicle emission program (applicable to new vehicles sold in the State), which forms a critical part of the State's efforts to protect its residents from severe air pollution and related health harms. 2-ER-144–45, ¶¶ 44-48.

California's vehicle emission program has been in place for more than sixty years—predating the federal government's entry into the field. 2-ER-140, ¶ 33. Since Congress created the waiver provision in 1967, California has received more than seventy-five preemption waivers from EPA, 2-ER-143, ¶ 42, and has continued to "act as a kind of laboratory for innovation" for vehicle technologies and regulatory approaches—as Congress intended. *Motor & Equip. Mfrs. Ass'n,*

4

*Inc. v. EPA (MEMA I)*, 627 F.2d 1095, 1111 (D.C. Cir. 1979).[3] In 1977, Congress amended the Clean Air Act to allow other States to adopt and enforce California's regulations as their own, under certain conditions. 2-ER-142–43, ¶¶ 39-40; 42 U.S.C. § 7507. The other Plaintiff States have each exercised this option as to one or more of California's regulations. *See Section 177 States Regulation Dashboard*, Cal. Air Res. Bd., https://perma.cc/4AZ7-94F8 (last updated Apr. 2025).

The first preemption waiver targeted by the federal government's unlawful actions authorizes California to enforce its Advanced Clean Trucks regulation, *see* 88 Fed. Reg. 20,688 (Apr. 6, 2023), which requires gradual increases in sales of medium- and heavy-duty zero-emission vehicles in California beginning with model year 2024. 2-ER-144, ¶ 45.

The second waiver authorizes California to enforce its Advanced Clean Cars II regulation, *see* 90 Fed. Reg. 642 (Jan. 6, 2025), which gradually strengthens California's longstanding emission standards for light-duty vehicles sold within the

---

[3] The Clean Air Act provides for judicial review of EPA's waiver decisions. 42 U.S.C. § 7607(b) (Section 307). In fact, many of the Proposed Intervenors have filed such challenges. *See WSTA v. EPA*, No. 23-1143 (D.C. Cir.) (consolidated challenges by AFPM, API, NACS, WSTA, and CIAQC to Advanced Clean Trucks waiver); *AmFree v. EPA*, No. 25-106 (9th Cir.) (consolidated challenges by AmFree and API to Advanced Clean Cars II waiver); *AFPM v. EPA*, No. 25-1085 (D.C. Cir.) (AFPM and NACS challenge to Advanced Clean Cars II waiver); *AmFree v. EPA*, No. 25-89 (9th Cir.) (consolidated challenge by AmFree and WSTA to Omnibus waiver); *AFPM v. EPA*, No. 25-1083 (D.C. Cir.) (AFPM challenge to Omnibus waiver). Those cases are presently in abeyance.

State, including zero-emission-vehicle sales requirements and exhaust emission standards for vehicles with internal combustion engines. 2-ER-144, ¶ 44.

The third waiver authorizes California to enforce its Omnibus regulation, *see* 90 Fed. Reg. 643 (Jan. 6, 2025), which likewise strengthens longstanding state emission standards and requires substantial reductions in exhaust emissions of smog-forming oxides of nitrogen from new medium- and heavy-duty vehicles. 2-ER-144–45, ¶ 46.[4]

The unlawful targeting of these three waivers began months (or, in the case of the Advanced Clean Trucks waiver, years) after they were granted. 2-ER-152, ¶ 74. Consistent with the view EPA had held for decades—and which the Government Accountability Office still holds, 2-ER-154, ¶ 84—each waiver explicitly stated that it was "not a rule" and that the Congressional Review Act "does not apply." 2-ER-151, ¶ 70 (quoting, e.g., 88 Fed. Reg. at 20,726). Yet in February 2025 EPA reversed course, suddenly declaring the opposite to be true—

---

[4] In an effort to exaggerate their purported interests in the case, Proposed Intervenors mischaracterize California's vehicle emission standards in various ways—for example, by mislabeling them as "de facto national standards" and "electric vehicle mandates." *E.g.*, WSTA Br. 1, 4, 6; Joint Br. 4, 8. Plaintiff States dispelled those mischaracterizations before the district court and explained that, if anything, they counseled against intervention. *E.g.*, 3-ER-351 n.1; 3-ER-365; 3-ER-366–67; SER-72 n.4. To be clear, none of Proposed Intervenors' complaints about California's emission standards is at issue in these consolidated appeals or in the case below.

that waivers *are* rules, not adjudicatory orders—without any process or explanation. 2-ER-149–53, ¶¶ 66-67, 69-71, 74-78. Deferring to EPA's misinterpretation, Congress purported to invoke the Congressional Review Act's expedited procedures and enacted joint resolutions claiming to invalidate the three waivers. 2-ER-157–58, ¶¶ 94-96; 2-ER-161–62, ¶¶ 108, 111.

The President signed the congressional resolutions on June 12, 2025. 2-ER-162, ¶ 113.[5]

## II. PROCEEDINGS BELOW

Plaintiff States promptly sued the United States, alleging that the congressional resolutions are unconstitutional and seeking to have them invalidated. 2-ER-177. Specifically, Plaintiff States allege that the resolutions' enactment violated the separation of powers, both by arrogating to Congress "the task of adjudication" that the Constitution reserves to the other branches, *United*

---

[5] WSTA Intervenors repeatedly, and erroneously, contend that the congressional resolutions "repeal[ed]" the Advanced Clean Trucks, Advanced Clean Cars II, and Omnibus regulations. *E.g.*, WSTA Br. 1, 7. That conflates EPA's *waivers* with California's *standards*.

Joint Intervenors, meanwhile, invoke the Supreme Court's passing description of the congressional resolutions in *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 107 n.1 (2025). Joint Br. 12, 34, 37-38. But that case—briefed and argued before the resolutions' enactment—involved a different waiver decision and no such resolution. Whether these congressional resolutions are valid and thus "restor[e] federal preemption," *id.* at 12, is a question of first impression now being litigated in the case below.

*States v. Brown*, 381 U.S. 437, 461 (1965), and by impermissibly delegating the Senate's exclusive power over its internal rules, U.S. Const. art. I, § 5, cl. 2, to the Executive Branch. 2-ER-170–72 (Count III). Plaintiff States further allege that the United States violated the Tenth Amendment and structural principles of federalism by employing an unprecedented and "extraordinarily defective national political process" to single out and upend California's regulatory program. *South Carolina v. Baker*, 485 U.S. 505, 513 (1988); 2-ER-172–73 (Count IV). Plaintiff States also challenge the Executive Branch's contributory actions as ultra vires and otherwise contrary to law. 2-ER-164–69 (Counts I and II).

The Zero Emission Transportation Association filed a motion to intervene as a plaintiff soon thereafter. 1-ER-10. No party opposed the motion. SER-104.

In the weeks that followed, several sets of trade associations and the State of Texas—totaling twenty-one entities and claiming to represent a wide range of interests, from vehicle manufacturing to petroleum refining to trucking—filed five motions to intervene as defendants. *See* 1-ER-3 & n.1. The trade associations (all Proposed Intervenors here) focused primarily on the purported economic harms their members would face from EPA's waiver decisions and the state vehicle emission standards they authorized; those who purported to identify a source of protection for these alleged interests cited the Clean Air Act. *See, e.g.*, 2-ER-277 (Alliance Movants claiming Clean Air Act Section 209(a) was intended "in part to

8

minimize economic strain on the automotive industry"); 2-ER-278 (asserting "economic" and "business" interests); 3-ER-383 (AFPM Movants alleging "classic monetary injuries" from California's "regulatory scheme"); SER-85 (WSTA Movants alleging they "will suffer severe economic harms if California's [standards] take effect"). In sum, the trade associations asserted financial interests in not "suffer[ing] the effects of" EPA waivers they believed to be "unlawful." 3-ER-454 (AmFree Movants citing Clean Air Act Section 307(b) (judicial review provision)); *see also* 2-ER-279 (taking issue with costs purportedly resulting from "EPA's action to waive preemption").

Plaintiff States opposed each of the five motions. *See* SER-63. They argued that Texas and the trade associations were not entitled to intervene as of right because their alleged interests related, if anything, to the lawfulness of EPA's prior decisions to grant the waivers—at issue in separate litigation, *supra* p.5 n.3—and not the congressional resolutions at issue in *Plaintiff States'* case. *E.g.*, SER-66–68. Plaintiff States further argued that the trade associations failed to rebut the presumption of adequate representation that arises where, as here, the "Department of Justice deploys its formidable resources to defend the constitutionality of a congressional enactment." *E.g.*, SER-69 (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011)). Plaintiff States also argued that permissive intervention should be denied because the proposed defendant-

intervenors' participation as parties would complicate and delay the case, to Plaintiff States' prejudice. *E.g.*, SER-71–74. In the alternative, Plaintiff States requested reasonable case management conditions, such as joint briefing requirements and page limits, to mitigate such prejudice. SER-74–75.

On November 17, 2025, the United States filed a motion to dismiss the operative complaint. 2-WSTA-ER-23. Consistent with the parties' negotiated briefing schedule, four groups of entities (none of them proposed defendant-intervenors) filed amicus briefs in support of the United States. *See id.* AmFree Movants, AFPM Movants, and WSTA Movants instead sought leave to file their own motions to dismiss. 4-ER-652–53. Plaintiff States opposed the first of those three requests on December 1, 2025, arguing, *inter alia*, that the proposed brief largely duplicated the United States' brief, underscoring the risk of prejudice and delay posed by the movants' participation. SER-36–40.

On December 2, 2025, the district court denied all motions to intervene, including the Zero Emission Transportation Association's unopposed motion to intervene as plaintiff. 1-ER-10–11.[6] Relevant here, the court denied intervention as of right because the proposed defendant-intervenors' alleged interests were insufficiently related to Plaintiff States' claims against the congressional

---

[6] Neither the Zero Emission Transportation Association nor the State of Texas appealed.

resolutions. 1-ER-7–8. The court also found that the proposed defendant-intervenors shared the same ultimate objective as the federal government and failed to overcome the presumption that their interests would be adequately represented. 1-ER-7–9. The court denied permissive intervention because the "myriad" proposed defendant-intervenors "would create inefficiencies and unduly delay the case without meaningfully advancing the substance of the matter." 1-ER-10. The court also expressed concern that the proposed defendant-intervenors would improperly seek to "introduce collateral issues about the legality of the waivers themselves" into the case. 1-ER-9 n.5 (citing, e.g., proposed defendant-intervenors' arguments concerning the costs of complying with California's standards).

Recognizing that the stipulated deadline for amicus briefs in support of the United States' motion to dismiss had already passed, and "to ensure an equal opportunity to be heard," the district court extended the deadline for proposed defendant-intervenors to file amicus briefs to December 12, 2025. 1-ER-11. AmFree Movants (joined by AFPM Movants) and Alliance Movants each filed an amicus brief. 4-ER-654. WSTA Movants chose not to.

The parties completed briefing on the United States' motion to dismiss on February 2, 2026, and the district court held a hearing on the motion on February 19, 2026. 4-ER-658–59.

11

## SUMMARY OF THE ARGUMENT

Proposed Intervenors are twenty trade associations purporting to represent thousands of businesses, including vehicle manufacturers, vehicle dealers, trucking fleets, and various participants along the fuel supply chain. Their case for intervention centers on the *outcome* of the litigation and the "practical" effects that certain state vehicle emission standards (as authorized by EPA's waivers) would allegedly have on their members. But taken to their logical conclusion, Proposed Intervenors' arguments would allow *anyone* claiming a stake in vehicle sales and their effects—including "millions of ordinary Americans," 3-ER-444—to gain entry to the case. That cannot be. While Federal Rule of Civil Procedure 24 is applied liberally, it also "set[s] bounds that must be observed." 7C Wright & Miller's Federal Practice & Procedure § 1904 (3d ed. 2025). The district court correctly found that Proposed Intervenors exceeded those bounds here.

As to intervention as of right, Proposed Intervenors failed to demonstrate that their desire to avoid the alleged economic effects of California's standards is a protectable interest that may be impeded by Plaintiff States' suit. Those economic interests lie in the legality of EPA's decisions under the Clean Air Act to waive preemption for the standards in the first place, as underscored by Proposed Intervenors' reliance on the Act's waiver and judicial review provisions (Sections 209 and 307) as the relevant source of protection. But such interests are simply not

12

at issue in the case below, where Plaintiff States challenge three congressional resolutions on separation of powers and federalism grounds. Indeed, these asserted interests are more properly vindicated in direct challenges to EPA's decisions—as Section 307 itself contemplates. Proposed Intervenors' ever-shifting allegations of *non*-economic interests are also inadequate. Among other things, Proposed Intervenors failed to present many of those allegations below and fail to establish that they are protectable in any event. In particular, Section 209 *preserves* California's vehicle emission program (subject to EPA waivers), and so neither that provision nor the congressional resolutions protects an interest in being free of state regulation altogether, as Joint Intervenors now seemingly contend.

All of Proposed Intervenors' asserted interests are adequately represented by the federal defendants, regardless. Proposed Intervenors agree the presumption of adequate representation applies, and their speculative arguments—that the federal government will not zealously defend the congressional resolutions; that adverse positions to the federal government *in other contexts* create adverse positions *here*; that Proposed Intervenors' interests might diverge from those of the federal government; or that the federal government might someday abandon its defense— are insufficient to rebut it.

As to permissive intervention, the district court reasonably determined, in its discretion, that the participation of twenty trade associations as defendants

13

alongside the United States would not meaningfully contribute to the litigation but would instead burden and delay it. Indeed, WSTA Intervenors do not even appeal this holding. The district court supported its conclusion with factual findings regarding the duplication between Proposed Intervenors' legal arguments and the federal government's; the risk that Proposed Intervenors would seek to inject collateral issues into the case; and Proposed Intervenors' reluctance to coordinate their participation. The district court then extended the deadline for amicus briefs in support of the United States' motion to dismiss to "ensure an equal opportunity to be heard," 1-ER-11, and Joint Intervenors took advantage of that opportunity.

The district court properly applied Rule 24's well-established framework to the facts presented. The portion of the court's order denying intervention as of right should be affirmed, and Joint Intervenors' appeal of the portion of the order denying permissive intervention should be dismissed for lack of jurisdiction.

## ARGUMENT

### I. PROPOSED INTERVENORS DID NOT ESTABLISH ENTITLEMENT TO INTERVENTION AS OF RIGHT

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), a movant must show that: (1) the motion is timely; (2) the movant has a "significantly protectable" interest in the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the movant's ability to

14

protect that interest; and (4) the movant's interest is inadequately represented by the existing parties. *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1001 (9th Cir. 2024). While courts generally construe Rule 24(a)(2) broadly in favor of intervention, the movant still bears the burden of establishing that its requirements are met, *id.* at 1001 & n.2; conclusory allegations will not suffice, *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818, 820, 822 (9th Cir. 2001). "Failure to satisfy any one of [Rule 24(a)(2)'s] requirements is fatal to the application." *Geithner*, 644 F.3d at 841.

This Court's review is de novo. *Id.* at 840.[7]

### A. Proposed Intervenors failed to demonstrate that they have protectable interests in the underlying case that would be impaired by its disposition

The district court properly applied Rule 24(a)(2)'s standard to the facts and arguments presented below when it held that Proposed Intervenors failed to satisfy the Rule's interest and impairment prongs. Proposed Intervenors' efforts to escape that holding on appeal by raising new (and forfeited) arguments fail.

---

[7] The timeliness requirement, which is reviewed for abuse of discretion, *Berg*, 268 F.3d at 817, is not at issue in these consolidated appeals. 1-ER-6.

### 1. Proposed Intervenors' asserted economic interests are unrelated to Plaintiff States' claims and can be protected in separate proceedings

Proposed Intervenors largely premised their motions below on an interest in avoiding the alleged economic effects of EPA's purportedly unlawful waiver decisions. *Supra* pp. 8-9 (describing motions). But such an interest does not relate to the claims at issue in the case, would not be impaired by its disposition, and thus cannot establish a right to intervene here.

**Lack of relationship to Plaintiff States' claims.** At an "irreducible minimum," Rule 24(a)(2) requires "that the asserted interest be 'protectable under some law'" *and* "that there exist 'a relationship between the legally protected interest and the claims at issue.'" *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022). "If these two core elements are not satisfied, a putative intervenor lacks any 'interest' under Rule 24(a)(2), full stop." *Id.*

Proposed Intervenors do not dispute this standard, Joint Br. 43; WSTA Br. 23, and the district court properly applied it, 1-ER-7–8. The court began by framing "what this case is—and is not—about": whether the federal government's purported use of the Congressional Review Act to disapprove EPA's waivers was "appropriate," *not* "whether the EPA's earlier decision to issue the waivers" to California was "itself lawful, prudent, or good policy." 1-ER-7. It then

16

acknowledged Proposed Intervenors' asserted economic interests in the latter, but deemed them insufficiently related to Plaintiff States' claims to support intervention as of right. 1-ER-7–8.

The district court reached the correct result. An "economic stake in the *outcome* of the litigation, even if significant, is not enough" where the movant's interests are unrelated to the *claims* being adjudicated. *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) (emphasis added); *accord United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009) ("A court must carefully analyze whether the … asserted interest really is bound up with the subject matter of the litigation."). Proposed Intervenors argued below that their purported economic interests stem from the lawfulness of EPA's decisions to issue the waivers at all, as confirmed by their reliance on Sections 209 and 307 of the Clean Air Act as the source of protection for those interests (by those who even identified a source). *See, e.g.*, 3-ER-454 (citing these provisions and asserting that "EPA's unlawful waivers" and the standards they allowed "harm [AmFree] Movants' members" and particularly their "economic interests"); *see also supra* pp. 8-9.[8] Proposed Intervenors freely admit that these asserted interests relate only

---

[8] To the extent Proposed Intervenor NADA now claims an even broader "legally protected ability to conduct business," Joint Br. 31, that argument is forfeited because NADA failed to assert such an interest before the district court.

(continued…)

17

to the outcome of the case should Plaintiff States prevail—i.e., if they obtain a declaration that the congressional resolutions are invalid. *E.g.*, Joint Br. 34 (describing interest as seeking "[r]elief" from the California standards covered by the waivers); *id.* at 29 (referencing fines manufacturers might be assessed *if* the congressional resolutions are invalidated and *if* California's regulatory agency enforces them); WSTA Br. 11 (describing interest as avoiding the litigation's potentially "trigger[ing]" effect on California's standards).

The economic impacts Proposed Intervenors "may face" if the relevant state emission standards "are eventually implemented," 1-ER-8, are simply "not an issue in the pending proceeding," *Greene*, 996 F.2d at 976. Here, the "backbone" of Plaintiff States' case, *see United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004), is a challenge to the United States' unprecedented attempt to negate state regulations through unconstitutional congressional resolutions. *E.g.*, 2-ER-136, ¶ 9 ("[T]he Federal Government ran roughshod over federalism and separation of powers principles."); 2-ER-137, ¶ 12 ("With every step, the workings of the National Government failed to follow the law and likewise failed to honor

---

*Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (per curiam). In any event, *Western Watersheds Project v. Haaland* confers no such interest. There, the plaintiff challenged the agency's issuance of certain oil and gas leases. 22 F.4th 828, 832 (9th Cir. 2022). Because the movant-intervenors held some of the challenged leases, they possessed protected contractual and due-process rights in the litigation. *Id.* at 833, 842. NADA cannot assert such rights here.

18

the special restraints on federal power over the States." (cleaned up)). Proposed Intervenors ignore these claims and instead characterize Plaintiff States' suit as having one aim: to enforce California's standards. Joint Br. 28; WSTA Br. 25. But while reducing air pollution and protecting their residents' health may be "one of" Plaintiff States' goals, it is "surely not the only one." *Greene*, 996 F.2d at 978. This suit, from start to finish, is about the congressional resolutions' unconstitutionality and their infringement on Plaintiff States' rights.

Proposed Intervenors, conversely, "claim[] no direct interest in whether" the federal government "is found to have violated" the Constitution; their interests are "limited to how this action's financial consequences might eventually affect [their] members' own pocketbooks." *Metro. St. Louis Sewer Dist.*, 569 F.3d at 840; *see also* Joint Br. 50 (disclaiming an interest in "defending the lawmaking process" behind the congressional resolutions). For example, Joint Intervenors frame the relevant inquiry as whether they may "intervene … to protect their members from … unattainable state sales mandates, competitive disadvantages, and product bans." Joint Br. 4; *see also* WSTA Br. 11 (claiming to represent "the end-users affected *by the regulations*" (emphasis added)). Proposed Intervenors may not like the follow-on effects should the congressional resolutions be struck down, but that contingent, attenuated interest is no substitute for establishing the requisite

19

relationship to Plaintiff States' claims. *Cal. Dep't of Toxic Substances Control*, 54 F.4th at 1088.[9]

Proposed Intervenors' cited authorities do not help them. In both *East Bay Sanctuary Covenant*, 102 F.4th at 1002-03 (cited at Joint Br. 24), and *Alisal Water Corp.*, 370 F.3d at 920-21 (cited at WSTA Br. 23), this Court concluded the movants' asserted economic interests were too far removed from the subject matter of the case to support intervention. In *Californians for Safe & Competitive Dump Truck Transportation v. Mendonca* (cited at Joint Br. 24), the intervenor union had an interest in prevailing wages for its members; that specific interest was expressly protected—even "guarantee[d]" by—the California law that was the "subject of [the] preemption suit." 152 F.3d 1184, 1190 (9th Cir. 1998). Here, by contrast, Proposed Intervenors assert diverse economic interests that are allegedly protected by the Clean Air Act and disconnected from the subject of Plaintiff States' challenge: the congressional resolutions. And in *Conservation Law Foundation of New England, Inc. v. Mosbacher* (cited at Joint Br. 34), the intervenor fishermen had an interest in "the discretion granted to the Secretary" to take no action (i.e., to

---

[9] WSTA Intervenors argue that Plaintiff States "did not dispute" these alleged economic impacts at the district court. WSTA Br. 26; *see also id.* at 11. The explanation is simple: Plaintiff States contended that such impacts were irrelevant to their claims against the congressional resolutions. SER-66–67. Regardless, Plaintiff States did correct various mischaracterizations of California's standards. *See supra* p. 6 n.4.

maintain the status quo). 966 F.2d 39, 43 (1st Cir. 1992). The parties' proposed consent decree would have eliminated that discretion, *id.*, and the fishermen thus established the requisite protectable interest and risk of impairment in seeking to oppose it. Again, no such direct connection between Proposed Intervenors' alleged economic interests and the challenged actions exists here.

Proposed Intervenors' attempt to bolster their asserted economic interests by piggybacking on *Diamond Alternative Energy* also fails. *See* Joint Br. 32-33, 37-38; WSTA Br. 24-25. There, the Supreme Court held that certain fuel companies and trade associations had Article III standing to challenge a different EPA waiver decision under the Clean Air Act. 606 U.S. at 106, 113. But as Joint Intervenors agree, standing is a separate inquiry not relevant here. Joint Br. 20; *see also Sweet v. Cardona*, 121 F.4th 32, 42-43, 48-49 (9th Cir. 2024) (holding movants had an injury in fact for purposes of Article III yet lacked a protectable interest for purposes of Rule 24(a)(2)). Even assuming various fuel producers, alongside manufacturers, were the "real targets" of California's standards—which Plaintiff States do not concede—Proposed Intervenors *still* fail to demonstrate how those entities' purported interests in the standards, and the lawfulness of the waivers that authorize them, relate to Plaintiff States' constitutional claims against different actions altogether. *See Arakaki v. Cayetano*, 324 F.3d 1078, 1084-85 (9th Cir. 2003) (stating that the movant's standing "for a collateral suit … does not alone

21

justify" intervention and examining whether the movant "adequately demonstrate[d] a relationship" between its interests and the plaintiffs' claims).

**Lack of impairment from disposition of the case.** Under this Court's precedent, a proposed intervenor's ability to adequately protect its interests in separate litigation can negate its claims of impairment under Rule 24(a)(2). *See United States City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002); *Akina v. Hawaii*, 835 F.3d 1003, 1012 (9th Cir. 2016). In *Greene*, for example, the Court denied intervention as of right where the movant's interest in treaty fishing rights was not at issue in the case, was governed by separate legal standards, and would be "fully and independently litigated" in another forum. 996 F.2d at 976-78.

Proposed Intervenors maintain their interests would be impaired here, emphasizing the drastic effects their members would purportedly face should Plaintiff States prevail and later enforce California's standards. *See* Joint Br. 4, 9-10, 30-31, 38 & WSTA Br. 8-9, 11, 24-25 (collectively complaining of, e.g., "unattainable" sales requirements, supply constraints, cost increases, and reliability concerns). But they already have an effective means of seeking redress for those grievances: petitions for review of EPA's waiver decisions under the Clean Air Act. *See* 42 U.S.C. § 7607(b) (judicial review provision); *see also id.* § 7543(b) (waiver criteria); *Nichols*, 142 F.3d at 463 ("technological feasibility" at issue "in the waiver context"). In fact, between them, Proposed Intervenors have brought

22

multiple challenges to all three waiver decisions targeted by the congressional resolutions. *Supra* p. 5 n.3; *see also* Initial Br. for Private Pet'rs 13-17, *WSTA*, No. 23-1143, Doc. No. 2025410 (arguing, *inter alia*, that EPA's waiver for Advanced Clean Trucks imposes significant economic costs and violates Section 209(b)). Joint Intervenors even admit that these suits "were filed well before this case and *seek to vindicate many of the same interests Appellants seek to protect here*." Joint Br. 39 (emphasis added). Left unsaid is which interests Joint Intervenors seek to protect here, but *not* in those other cases.

Just as in *Greene*, then, Proposed Intervenors' asserted interests lie in a distinct issue—whether EPA's waiver decisions comply with the Clean Air Act— that is unrelated to Plaintiff States' challenges to the congressional resolutions and subject to separate legal standards. *Greene*, 996 F.2d at 976. And, as in *Greene*, Proposed Intervenors' "separate, ongoing" litigation, to which they are "already parties," provides them a forum in which to advance those interests. *Id.* at 977-78. Proposed Intervenors may protest that their members would suffer effects from California's standards in the interim, *see* Joint Br. 18 (decrying prospect of "immediate harm"); WSTA Br. 26 (describing effects as "automatic"), but they cite no authority treating such interim impacts as sufficient to establish impairment under Rule 24(a)(2). To the contrary, courts have denied intervention as of right where a movant could protect its interests by filing another lawsuit—even though

the movant might not obtain immediate relief under such circumstances. *See City of Los Angeles*, 288 F.3d at 402; *Akina*, 835 F.3d at 1012.

Joint Intervenors make a half-hearted argument about the potentially preclusive effects of Plaintiff States' suit on their waiver litigation. But while "stare decisis effects" should be considered, Joint Br. 40, the risk of such effects must be "clear," *Greene*, 996 F.2d at 977. Both here and before the district court, Joint Intervenors fail to articulate why a determination that the congressional resolutions violated separation of powers and federalism principles would create precedent bearing on whether EPA properly applied the Clean Air Act's statutory criteria when it issued the targeted waivers to begin with. *See* Joint Br. 40; 3-ER-455–56 (AmFree Movants alone making conclusory references to stare decisis effect). True, a victory for Plaintiff States would confirm that the congressional resolutions did not alter the waivers' legal status. But that would simply restore the status quo as it existed when Proposed Intervenors filed their various petitions for review under the Clean Air Act; it would not determine, or even bear on, the merits of those petitions.[10]

---

[10] Joint Intervenors claim that the congressional resolutions are "already at issue" in the petitions pending before this Court. Joint Br. 40 n.3. Not so. While EPA—joined by the petitioners, many of them Proposed Intervenors here—attempted to inject the resolutions into those cases via motions to dismiss, *see id.*, the Court granted California and several Plaintiff States' requests to hold the cases

(continued…)

24

**No legal error.** Proposed Intervenors' assorted challenges to the district court's legal analysis miss the mark.

First, the district court's fact-bound conclusion that Proposed Intervenors failed to demonstrate a protectable interest *here* by no means announced a categorical or novel rule that movants could *never* do so in disputes involving government procedure. *Contra* Joint Br. 5, 44-45. The order makes clear that the district court examined each movant's asserted interests and Plaintiff States' legal claims before reaching its conclusion. 1-ER-7–8. And contrary to Joint Intervenors' suggestion, while *Wilderness Society v. U.S. Forest Service* abrogated the "federal defendant" rule for National Environmental Policy Act cases, it did not hold that private parties would *always* be able to demonstrate a sufficient interest in such cases. 630 F.3d 1173, 1179 (9th Cir. 2011); *id.* at 1180 (Rule 24(a)(2) requires a "contextual, fact-specific inquiry"). Indeed, this Court recently interpreted *Wilderness Society* as confirming that, "in all cases," a movant must show that its interest relates to the claims at issue. *Cal. Dep't of Toxic Substances*

---

in abeyance instead. Order, *AmFree*, No. 25-89 (9th Cir. Feb. 27, 2026), Dkt. 54.1; Order, *AmFree*, No. 25-106 (9th Cir. Mar. 2, 2026), Dkt. 58.1. Even assuming their premise is correct, Joint Intervenors do not explain how the district court's disposition of the case below would have stare decisis effect on their cases at the Ninth Circuit.

*Control*, 54 F.4th at 1088. The district court simply held Proposed Intervenors to that standard.

Second, the district court did not err by omitting an express reference to Joint Intervenors' stare decisis argument from its order. *Contra* Joint Br. 42. As discussed, Joint Intervenors never explained how the disposition of Plaintiff States' constitutional theories would affect their distinct claims against EPA under the Clean Air Act. In any event, the district court found that "the legality of the waivers themselves" bore an insufficient relationship to the case, thus disposing of that argument. 1-ER-9 n.5; *see also* 1-ER-7–8.

> **2. Proposed Intervenors failed to establish that their asserted non-economic interests are protectable under law; their new arguments on appeal are waived and also meritless**

Some Proposed Intervenors alleged certain non-economic interests before the district court. They failed, however, to demonstrate that those interests are protectable under law or bear the requisite relationship to Plaintiff States' claims. Proposed Intervenors' attempts to rehabilitate and recast these interests on appeal are waived and, in any event, meritless.

**Advocacy interests.** "In some contexts," this Court has "determined that interests less plainly protectable by traditional legal doctrines sufficed for intervention of right," such as where the movant-intervenor sponsored the

26

challenged statute or ballot initiative. *Sierra Club v. EPA*, 995 F.2d 1478, 1482-83 (9th Cir. 1993).

Relying on such precedent, Joint Intervenors each claim an interest from having "championed" the congressional resolutions. Joint Br. 29-30, 31-32, 36-37, 39. To begin, they ignore that AmFree Movants are the *only* proposed defendant-intervenors who claimed that interest below. Because the remaining Joint Intervenors "made no mention of any such interest," their argument is forfeited. *Schwarzenegger*, 630 F.3d at 905. Joint Intervenors' filing of a joint brief does nothing to displace that well-accepted principle.

The "championing" that AmFree Movants identified, meanwhile, bears no resemblance to the type of advocacy found sufficient in the cases they cite. *See* Joint Br. 24-25. In *Sagebrush Rebellion v. Watt*, for instance, the movants had actively participated in the administrative process leading to the agency action at issue in the suit. 713 F.2d 525, 526 (9th Cir. 1983); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397-98 (9th Cir. 1995) (same); *Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980) (movant had actively pushed for proposed constitutional amendment, whose ratification procedures were being challenged). Here, AmFree Movants point (as they did below) to a blog post by the Illinois Corn Growers thanking members of that State's congressional delegations for their votes in favor of the congressional resolutions *after the fact*. *See* Joint Br. 36

27

(citing https://perma.cc/ 8YAS-6QZD). That is not advocacy, and it cannot suffice to establish a protectable interest in the congressional resolutions under Rule 24(a)(2). To hold otherwise would convert every press release or social media post—even those that post-date the relevant government action—into a basis for intervention as of right.[11]

True, AmFree Movants also cited more meaningful engagement concerning *other* government actions, such as submitting public comments during EPA's waiver proceedings and filing lawsuits challenging several waiver decisions. Joint Br. 36, 39 (citing 3-ER-339, 3-ER-450–51, & 3-ER-455). As with Proposed Intervenors' asserted economic interests, however, those efforts lack the requisite relationship to Plaintiff States' claims because they do not concern the congressional resolutions at all. *See supra* pp. 16-22.[12]

---

[11] AmFree Movants also cite 3-ER-339, which in turn links to an additional press release by AmFree not referenced in the Joint Brief (https://perma.cc/PE6V-C9K2). But that press release similarly postdates the congressional resolutions' enactment (and Plaintiff States' suit) and so it, too, is inadequate.

[12] Even assuming they did not forfeit this argument, AFPM Movants' and Alliance Movants' proffered advocacy materials likewise fall short. *See* Joint Br. 29-30, 31-32, 36-37. Most of those materials simply "applaud[]" the congressional resolutions after the fact and/or lack any call to action. *See id.* at 31-32 & n.2 (citing https://perma.cc/M9KB-7LBP); *id.* at 36 (citing https://perma.cc/K4FJ-6FMH, https://perma.cc/H3MA-7Y3J, & https://perma.cc/B5LD-22LD). Only two predate the votes and are directed *at* Congress. *See id.* at 29-30 (citing https://perma.cc/ QX4V-YQKY); *id.* at 31-32 & n.2 (citing https://perma.cc/C75N-GBT5). Still, a two-page letter and one-page backgrounder cannot establish a

(continued…)

The district court thus did not err by failing to explicitly cite AmFree Movants' alleged advocacy interests; any such interests that were protectable under this Court's precedent were insufficiently related to Plaintiff States' claims under the same reasoning the district court applied to Proposed Intervenors' alleged economic interests. *Contra* Joint Br. 41-42. That reasoning in no way implicitly manifests a preference for "one class of litigants over others." *See id.* at 25 (quoting *Diamond Alt. Energy*, 606 U.S. at 132 (Jackson, J., dissenting)). Rather, the district court took an even-handed approach, as further demonstrated by its denial of the Zero Emission Transportation Association's motion to intervene as plaintiff—even though it was unopposed—and its commitment to "ensur[ing]" that all interested organizations and trade associations, including denied intervenors, had an "equal opportunity to be heard" as amici. 1-ER-10–11.

WSTA Intervenors, for their part, claim an interest in how "the outcome" of Plaintiff States' case "may affect the outcome" of their litigation challenging EPA's waiver for Advanced Clean Trucks. WSTA Br. 23, 28-29. Even assuming this interest is protectable—which WSTA Intervenors nowhere establish—WSTA Intervenors' litigation involves issues under the Clean Air Act that are "ancillary to

---

sufficient interest for intervention as of right. *Supra* pp. 27-28. Any examples of deeper engagement relate to EPA's waiver decisions and the state standards they authorize and so fail for the same reason as AmFree Movants'. *See* Joint Br. 31 (citing 2-ER-269); *id.* at 36 (citing 3-ER-387, 3-ER-392, & 3-ER-396).

29

the actual issues raised" in Plaintiff States' case, i.e., whether the post-waiver congressional resolutions violated separation of powers and federalism principles. 1-ER-7–8. And in fact, both WSTA Intervenors' and Joint Intervenors' preexisting litigation challenging EPA's waiver decisions cuts *against* their grounds for intervening as of right, as discussed in the preceding section. *See supra* pp. 22-24.

WSTA Intervenors' insistence that Plaintiff States' case has "already affected" their Advanced Clean Trucks waiver litigation is misplaced. WSTA Br. 28. While WSTA Intervenors suggest that their waivers-are-rules argument is at issue there, *id.* at 21, the argument is absent from their opening brief, *see* Initial Br. for Private Pet'rs, *WSTA*, No. 23-1143, Doc. No. 2025410. And though they allege that EPA "sought to voluntarily dismiss that case" following the congressional resolutions' enactment, WSTA Br. 28, no such events appear on the docket. Rather, the litigation has been in abeyance as of December 2023, and no substantive filings have been made since. *See WSTA*, No. 23-1143, Doc. No. 2032808.[13]

---

[13] Notably, EPA *did* move to dismiss WSTA's petition for review of the *Omnibus* waiver. EPA's Mot. to Dismiss, *H.R. Ewell, Inc. v. EPA*, No. 25-1475 (9th Cir.), Dkt. 24. WSTA ultimately supported that motion. *See* Petrs.' Resp. to EPA's Mot. to Dismiss at 8-9, *H.R. Ewell*, No. 25-1475, Dkt. 37.1. That is no basis for concluding that WSTA Intervenors' asserted litigation interests have been impaired by Plaintiff States' suit, particularly where WSTA Intervenors have failed to even mention their Omnibus waiver litigation.

Finally, WSTA Intervenors' contention that this suit could *benefit* them in future petitions for review falls flat. *See* WSTA Br. 28-29. Rule 24(a)(2) focuses only on *impairment*. As such, WSTA Intervenors' belief that a decision favorable to them on the waivers-are-rules argument would provide new, "easier" avenues for challenging waivers going forward is beside the point (and speculative at best). *See id.* at 17-19, 21, 29. WSTA Intervenors' asserted interest in "avoid[ing] the time and costs" of having to litigate their Advanced Clean Truck waiver challenge is likewise irrelevant. *Id.* at 28. As this Court has held, such "[]mere inconvenience … is not the sort of adverse practical effect contemplated by Rule 24(a)." *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977).

**"Right to buy and sell."** Joint Intervenors maintain that the district court did not consider a separate "non-economic interest," namely, "their right to buy and sell federally approved vehicles free from state compliance requirements and fines." Joint Br. 42. But while Joint Intervenors now focus on this interest on appeal, they failed to sufficiently raise it before the district court, if at all. *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1229-30 (9th Cir. 2008) (arguments made in passing are forfeited). Indeed, Joint Intervenors cannot point to any support in AFPM Movants' papers, which relied exclusively on alleged economic interests. *See* 3-ER-382–83. The cited paragraph from AmFree Movants' motion repeatedly characterizes the "harm[s]" alleged as *economic.* Joint

31

Br. 42 (citing 3-ER-454); 3-ER-454–55 (alleging harms to "economic interests," asserting desire to "shield" members from "economic harm," and relying on several cases involving economic harm). The cited pages from Alliance Movants' briefs likewise refer to "compliance and economic interests as directly regulated parties," "business interests in the ability to meet consumer demand," and "regulatory interests in stable regulations" that enable "forward-looking production decisions." 2-ER-187, 2-ER-276; *see also* 2-ER-276–79 (asserting interests in "minimize[d] economic strain" and repeatedly expressing concerns about "costs"). These interests are, at bottom, economic interests. Even now, Joint Intervenors struggle to explain how a "right to buy and sell"—to engage in *economic* transactions—is a "non-economic" interest the district court ignored. Joint Br. 42.[14]

Even assuming they had staked out this separate, non-economic interest before the district court, Joint Intervenors failed to articulate how the Clean Air Act—the only source of protection identified below—establishes such a far-ranging right to be free of state vehicle emission standards. *See* 2-ER-277 (citing

---

[14] Even if some of these interests, as alleged below, could reasonably be characterized as "non-economic," they are not the interest Joint Intervenors assert now on appeal. For example, an interest in stable, feasible regulations, *e.g.*, 2-ER-277, is not the same as Joint Intervenors' newly alleged interest in *no* state regulation whatsoever.

Section 209); 3-ER-454 (citing Sections 209 and 307). True, that Act can serve as the source of protection even though it is not "the statute under which" Plaintiff States' claims are "brought." Joint Br. 43 (citing *Sierra Club*, 995 F.2d at 1484). But an asserted interest must still be one the identified law was "meant to protect." *Sierra Club*, 995 F.2d at 1483. And here, the Clean Air Act reflects Congress's express choice to allow California to continue and expand "'its already excellent program' of emissions control," *MEMA I*, 627 F.2d at 1110 (quoting S. Rep. No. 403, 90th Cong., 1st Sess. 33 (1967)), and to allow other States to opt in to that program, 42 U.S.C. § 7507. Thus, while Section 209 might protect against state regulations for which EPA granted *unlawful* preemption waivers, *see supra* pp. 17-18, it does not protect against *any* state regulation at all—as Joint Intervenors appear to argue, Joint Br. 42.[15]

Nor could Section 209's protections extend beyond manufacturers to include, e.g., vehicle dealers, fuel suppliers, and purchasers. Congress designed Section 209 to balance California's interests against manufacturers' concerns. *See MEMA I*,

---

[15] Joint Intervenors—and particularly Alliance, who most strongly asserts this "right"—are not, in fact, free of such state regulation now. Any claim to the contrary is belied by the United States' recently filed lawsuit seeking to enjoin California from enforcing regulations the United States itself alleges are currently operable pursuant to waivers not affected by the congressional resolutions. Compl. ¶ 55, *United States v. Cal. Air Resources Bd.*, No. 2:26-cv-00847 (E.D. Cal.), Dkt. 1 (referring to the "regulations" California "is currently enforcing"); *see also id.*, ¶ 32 (describing EPA reinstatement of earlier waiver for those regulations).

33

627 F.2d at 1109-10 (describing Congress's consideration of the "economic disruption" to *manufacturers* in devising the waiver provision).[16] Joint Intervenors' cited authorities reflect a similar goal of protecting manufacturers and Congress's "carefully calibrated regulatory scheme." *See Engine Mfrs. Assoc. v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 254-55 (2004) (rejecting standards directed towards purchasers as preempted under Section 209 because such standards still ultimately targeted plaintiff manufacturers' production of "vehicles or engines"); *see also In re Volkswagen "Clean Diesel" Mtkg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1217-18 (9th Cir. 2020) (agreeing that Section 209 protects manufacturers from certain pre-sale regulation by state and local governments). Section 307 of the Clean Air Act, meanwhile (cited by AmFree Movants below, 3-ER-454), is a judicial review provision that, if anything, protects only against unlawful implementation of the Act; it does not create new substantive rights. *See* 42 U.S.C. § 7607(b). In any event, Section 307 provides an express mechanism by

---

[16] Section 209 also says nothing about a right to "protect[] demand for … fuel products," Joint Br. 33, as it only governs emission standards, 42 U.S.C. § 7543(a), (b). Indeed, Section 209 does not refer to fuel demand or consumption at all, and thus EPA does not consider such issues in its Section 209(b) waiver actions. *E.g.*, 87 Fed. Reg. 14,369 (Mar. 14, 2022) ("EPA has reviewed waiver requests by evaluating them solely under the criteria of section 209(b)."); *Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151, 1171 (E.D. Cal. 2007), *as corrected* (Mar. 26, 2008) ("If EPA concludes that California's regulations meet [Section 209(b)'s] requirements, EPA is obliged to grant the waiver application." (citing *Nichols*, 142 F.3d at 463)).

which Joint Intervenors' broader interests are more appropriately vindicated: petitions for review of EPA's waiver decisions. *See supra* pp. 22-24.

Because Section 209 does not bear the weight they give it, Joint Intervenors attempt *another* pivot on appeal, arguing, for the first time, that their members are the "intended beneficiaries" *of the congressional resolutions*. *E.g.*, Joint Br. 26-28 (no citations to briefing below). This argument is plainly forfeited. *Schwarzenegger*, 630 F.3d at 905.

Joint Intervenors' argument fails in any event. For one thing, it again rests on the faulty premise that the Clean Air Act establishes a right to be free of all state emission standards—a right Joint Intervenors claim the congressional resolutions "restore[d]." Joint Br. 26; *see also id.* at 30, 38. As explained, the Clean Air Act provides no such right; to the contrary, it expressly provides that the manufacturers will be subject to such standards if EPA waives preemption, which the agency did for the Advanced Clean Trucks, Advanced Clean Cars II, and Omnibus regulations. *See* 42 U.S.C. § 7543(b)(1). The congressional resolutions did not "restore" (and could not have restored) a statutory right that never existed.

For another, this Court has only accepted "intended beneficiary" interests for intervention purposes where the statute plainly aimed to benefit the particular parties seeking to intervene and the particular interests they sought to advance. Thus, in *California ex rel. Lockyer v. United States* (Joint Intervenors' primary

authority), the statute expressly identified "institutional or individual health care entit[ies]" as its intended beneficiaries, and those entities' views on abortion as protected interests. 450 F.3d 436, 439 n.1 (9th Cir. 2006) (quoting statute). It was thus undisputed that "Congress passed [that statute] *precisely* to [protect] doctors who have moral qualms about performing abortions…." *Id.* at 441 (emphasis added). Similarly, in *Fresno County v. Andrus*, it was obvious that "Congress enacted the reclamation laws" "precisely" to protect small farmers by providing them with "small tracts of farm land at nonspeculative prices." 622 F.2d 436, 438 (9th Cir. 1980). Indeed, the Supreme Court had recognized this interest as protected by the statute and sufficient for intervention in another case. *Id.* (citing *Bryant v. Yellen*, 447 U.S. 352, 366-67 (1980)). Joint Intervenors' remaining authorities are no different. *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 564, 566-69 (5th Cir. 2016) (recognizing interest in regulatory scheme that "operates *exclusively*" for the benefit of movants-intervenors (emphasis added)); *Pennsylvania v. President United States of Am.*, 888 F.3d 52, 58 (3d Cir. 2018) (recognizing interest in defending exemption directly applicable to movant-intervenors).

By contrast, the congressional resolutions challenged below indicate no intent to protect a particular group or interest. Unlike the statute in *Lockyer*, the resolutions' text makes no reference to *any* entities—not to automakers, dealers,

36

trucking companies, fuel producers, corn farmers, convenience stores, or any of the myriad other entities represented by the trade associations seeking to intervene. Joint Br. 14-15; WSTA Br. 8. Instead, the text of each resolution simply expresses Congress's disapproval of a particular EPA waiver. 3-WSTA-ER-325–27. To the extent the legislative history is relevant, *see Fresno County*, 622 F.2d at 438, it reflects broad-based intentions concerning consumers nationwide, not a precise set of intended beneficiaries. *See* 2-WSTA-ER-151 (claiming effects from California's regulations on "America, American workers, and the American economy"); *id.* (asserting interests of "[e]very American citizen"); 2-WSTA-ER-220 (asserting congressional resolutions would "protect[] consumers and workers across the country"). Such "undifferentiated" and "generalized" intentions—to the extent these floor statements even reflect the congressional resolutions' reach—do not bring any Joint Intervenor within the scope of this Court's "intended beneficiary" cases. *Lockyer*, 450 F.3d at 441.[17]

---

[17] Should the Court reach Joint Intervenors' "intended beneficiary" theory and conclude that it applies here, Alliance—whose members are regulated manufacturers—should be the sole movant able to satisfy it. Interpreting the theory more broadly to allow more—or, indeed, all—Joint Intervenors to assert a protectable interest in the case would contradict the well-established principle that interests must be specific to the movant, not generalizable across supply chains and industries. *See Lockyer*, 450 F.3d at 441.

37

Proposed Intervenors' emphasis on this Court's "practical" and "liberal" approach to Rule 24(a)(2) is no solution, for any of their arguments. *E.g.*, Joint Br. 4, 23; WSTA Br. 12-13, 27. "Liberality does not equate with rights of indiscriminate intervention." 7C Wright & Miller's Federal Practice & Procedure § 1904 (cleaned up); *see also Metro. St. Louis Sewer Dist.*, 569 F.3d at 841 ("[A] federal case is a limited affair, and not everyone with an opinion is invited to attend."). Proposed Intervenors' own authorities confirm this principle. For example, in both *Alisal Water Corp.*, 370 F.3d at 919-21, and *City of Los Angeles*, 288 F.3d at 397-98, 402-03, the Court referenced this liberal approach but denied intervention as of right nonetheless.

Indeed, *Alisal Water Corp.* warned that "[a] mere interest in property that may be impacted by litigation is not a passport to participate in the litigation itself." 370 F.3d at 920 n.3; *id.* (observing that such a "bootstrap[ping] approach" would "create a slippery slope"). Yet, under Proposed Intervenors' view of intervention, every individual and business involved at every stage of the vehicle and fuel industry—from manufacturing to fueling to purchase—could claim a protectable interest in the case. That is "too porous a foundation on which to premise intervention as of right." *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002); *see also Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983) (denying intervention where organization and its members did

38

"indeed have an interest[,]" but "[t]he same can be said of a substantial portion of the population of northern California"). Proposed Intervenors' uncabined approach to Rule 24(a)(2) should be rejected.

### B. Proposed Intervenors did not overcome the presumption that the federal government would adequately represent their claimed interests in any event

Separately and independently, Proposed Intervenors are not entitled to intervene as of right because they did not rebut the presumption of adequate representation at the district court. Their arguments on appeal fare no better.

A presumption of adequate representation arises when an existing party and would-be intervenor "share the same 'ultimate objective.'" *Geithner*, 644 F.3d at 841. That presumption is "nowhere more applicable than in a case"—like the one below—"where the Department of Justice deploys its formidable resources to defend the constitutionality of a congressional enactment." *Id.* Overcoming the presumption requires a "very compelling showing," such as "direct evidence" of a conflict between the party and proposed intervenor. *Lockyer*, 450 F.3d at 443, 445 (cleaned up). Vague fears and speculation fall "far short." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 740 (9th Cir. 2011); *see also Geithner*, 644 F.3d at 841-42.

Proposed Intervenors concede the presumption of adequate representation applies. Joint Br. 46; WSTA BR. 13-14. Each of their attempts to rebut it fails.

39

### 1. The federal government's litigation choice to defer a single argument does not rebut the presumption

Despite seeking to make arguments in the litigation below that almost entirely duplicate those made by the federal government, Proposed Intervenors point to a single argument the federal government has not yet made as evidence that its representation is inadequate. Joint Br. 47-48; WSTA Br. 14-20. That is precisely the sort of "difference[] in litigation strategy" that "do[es] not normally" overcome the presumption of adequate representation, *Arakaki*, 324 F.3d at 1086, "[p]articularly where," as here, "the proposed intervenor is permitted to file an amicus brief," *Idaho Bldg. & Constr. Trades Council, AFL-CIO v. Inland Pac. Chapter of Associated Builders & Contractors, Inc.*, 616 F. App'x 319, 320 (9th Cir. 2015) (mem.).

The district court proceedings make clear that the United States is mounting a "full and vigorous defense" of the congressional resolutions. *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 954 (9th Cir. 2009). Their motion to dismiss attacks all of Plaintiff States' claims and raises not just threshold defenses but merits arguments as well. *See* 2-ER-59–60; *see also* U.S. Notice That No Answering Brief Will Be Filed ("U.S. Notice") at 1-2, Dkt. 33.1 (summarizing breadth of United States' motion to dismiss); *contra* WSTA Br. 2 (mischaracterizing United States' motion as "narrowly focus[ed]"). In fact, the

40

motion includes nearly every argument Proposed Intervenors sought to make (and did make as amici). *See* 1-ER-8–9 (examining AmFree Movants', AFPM Movants', and WSTA Movants' proposed motions to dismiss and finding that the arguments "mirror[ed]" the federal government's).

"This is certainly not a case," then, "in which the government is less than enthusiastic" about its defense. *League of United Latin Am. Citizens v. Wilson (LULAC)*, 131 F.3d 1297, 1305 (9th Cir. 1997) (cleaned up) (assessing adequacy of representation in context of timeliness prong). Proposed Intervenors' reliance on a single merits argument the United States did not advance in its motion to dismiss—that EPA's waivers are rules, not adjudications—does not establish otherwise, for three reasons. *See* Joint Br. 47-48; WSTA Br. 14-20.

First, WSTA Intervenors insist the federal government has abandoned the argument, but "[a] defendant who omits a defense under Rule 12(b)(6)—failure to state a claim upon which relief can be granted—does not waive that defense." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317-18 (9th Cir. 2017); *contra W. Watersheds Project*, 22 F.4th at 833 (cited at Joint Br. 48) (presumption rebutted where federal government failed to raise certain colorable arguments at summary judgment). In fact, the United States has made clear—both below and to this Court—that it may raise the argument as appropriate as the case proceeds. SER-9 n.1 (explaining United States' decision not to make the argument, "at least in [its]

41

motion to dismiss"); U.S. Notice at 2 ("correct[ing]" WSTA Intervenors' assertion that federal defendants abandoned the waivers-are-rules argument).[18]

Second, Proposed Intervenors do not, and cannot, claim that the federal government has conceded the argument or taken the opposite view, i.e., that waivers are not rules. *See* WSTA Br. 29 (merely speculating the federal government "may concede" the argument). That distinguishes the present case from both *Lockyer* (cited at Joint Br. 47-48 & WSTA Br. 14-16) and *Citizens for Balanced Use v. Montana Wilderness Ass'n* (cited at Joint Br. 48). In *Lockyer*, the federal government "ha[d] already" offered a limiting construction of the statute that "actually compromise[d] (and potentially eviscerate[d])" its protections. 450 F.3d at 444-45. And in *Citizens for Balanced Use*, the Court disagreed that the presumption of adequate representation applied and concluded that, regardless, the "peculiar circumstances of th[e] case"—the agency's attempt to "overturn on appeal the very court decision that forced it to adopt" the rule it was supposed to be defending—rebutted it. 647 F.3d 893, 899-900 (9th Cir. 2011). Those circumstances are absent here.

---

[18] Plaintiff States disagree with, and vigorously rebutted, the federal government's contention that the district court lacks jurisdiction over this or any of their other issues or claims. Plaintiff States also disagree that a decision that waivers are rules would dispose of their complaint below. *See* Joint Br. 47; WSTA Br. 15. Neither dispute requires resolution here.

Third, nothing about the waivers-are-rules argument is specific to Proposed Intervenors' alleged interests or views. *Contra* WSTA Br. 16-17 (speculating that the federal government may not bring the argument "for policy or institutional reasons"); Joint Br. 19 (same). Stated differently, this purely legal argument does not require or reflect any expertise unique to Proposed Intervenors, but rather is one the United States is fully able to make. *See* 1-ER-9 (finding none of Proposed Intervenors' arguments "appear unique to them"); *see also Drakes Bay Oyster Co. v. Salazar*, No. 12-cv-06134, 2013 WL 451813, at *9 (N.D. Cal. Feb. 4, 2013) (that federal government did not share movants' personal perspective had no bearing on whether it would abandon a particular argument), *aff'd sub nom. Drakes Bay Oyster Co. v. Env't Action Comm. of W. Marin*, 571 F. App'x 605 (9th Cir. Apr. 29, 2014). For that reason, *Berg* (cited at Joint Br. 47) is inapposite. In that case, the conservation plan at issue required collaborative input from both government and private stakeholders, and the city defendant admitted it would not represent the private movant-intervenors' interests. 268 F.3d at 823.

Put simply, the United States' choice not to make a particular argument at a particular moment of the case underscores that any difference in litigation posture between the federal government and Proposed Intervenors is "rooted in style and degree, not the ultimate bottom line." *Perry*, 587 F.3d at 949; *see also Arakaki*, 324 F.3d at 1087 (relevant question is whether defendants "are capable and willing to

make this argument *should it be necessary*" (emphasis added)). That is insufficient to rebut the presumption of adequate representation.

This result is bolstered by Proposed Intervenors' failure to explain why participating as amici—as opposed to gaining full party rights—prejudices them. *See Prete v. Bradbury*, 438 F.3d 949, 959-60 & n.18 (9th Cir. 2006) (applying harmless error doctrine to intervention ruling and collecting cases); *Greene*, 996 F.2d at 978 (citing favorably to district court order denying intervention as of right but "accommodat[ing] [movants'] concerns by allowing their participation" as amici). In *City of Los Angeles*, for example, the Court concluded amicus status would not adequately protect the police league movant's rights because the complaint sought injunctive relief against the league's member officers; the proposed consent decree left open the possibility of such relief; and the proposed consent decree further threatened to unilaterally alter the league's collective bargaining agreement with the city. 288 F.3d at 399-401. In contrast here, Proposed Intervenors would not be bound by the judgment and seek only to assert certain legal arguments. In fact, four groups of amici—including AmFree Movants (joined by AFPM Movants) and Alliance Movants—made the waivers-are-rules argument in their briefs supporting the United States' motion to dismiss, SER-28– 29; SER-31–34; SER-42–43 & SER-44–48; SER-53–57, and Plaintiff States and

several of their amici responded in kind, SER-11–12; SER-14–19; SER-21–23; SER-25–26.

### 2. WSTA Intervenors' adverse relationship to the federal government in *other* contexts does not establish inadequate representation here

WSTA Intervenors argue that the federal government cannot adequately represent their interests because they are "adverse parties in a separate case." WSTA Br. 20; *see also id.* at 21 ("The mere fact that they are adverse parties is a conflict of interest."). WSTA Intervenors offer no authority for this remarkable proposition, and, as such, this Court need not consider it. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) ("It is [the appellant's] burden … to present the court with legal arguments to support its claims."). Nor would the proposition make sense: parties often find themselves on different sides of the "v" from the federal government depending on the circumstances and posture of the case. That, by itself, cannot defeat the presumption of adequate representation.

Rather, Rule 24(a)(2) demands a fact-specific inquiry, *Wilderness Soc'y*, 630 F.3d at 1180, and the facts *here* undermine any claims of adversity. Despite suggesting otherwise, WSTA Br. 21, WSTA and CIAQC have *not* presented their waivers-are-rules argument in their challenge to the Advanced Clean Trucks waiver. *See supra* p. 30. Thus, while they and EPA might be adverse on the

45

question of whether EPA complied with the Clean Air Act in granting that waiver, that dispute has no bearing on WSTA Intervenors' position vis-à-vis the federal government in the case below. Meanwhile, WSTA *supported* EPA's motion to dismiss its challenge to the Omnibus waver. *See supra* p. 30 n.13. Both cases are now in abeyance. WSTA Intervenors therefore cannot point to any conflict of interest that is relevant here and can only speculate that one might materialize in the future. Such "prophesying" is not enough to rebut the presumption of adequate representation. *LULAC*, 131 F.3d at 1307.

WSTA Intervenors also contend that the federal government cannot adequately represent the interests of regulated parties. WSTA Br. 22. But WSTA Intervenors' members are not regulated by the congressional resolutions, which are the subject of Plaintiff States' suit. *See supra* pp. 18-19. Nor are they regulated by California's Advanced Clean Trucks or Omnibus standards. *Compare* WSTA Br. 5-6 (describing those regulations' requirements for manufacturers), *with id.* at 8 (describing WSTA's and CIAQC's members as end users). Regardless, while the federal government is of course not regulated by California's standards, it does not follow that its legal defense of the congressional resolutions must be deficient. *See Prete*, 438 F.3d at 959 n.13. To the contrary, the United States is seeking to uphold the resolutions—an objective WSTA Intervenors, like all Proposed Intervenors, indisputably share. *See* 1-ER-8. The First Circuit's decision in *Mosbacher* is

46

therefore inapposite. There, the Secretary of Commerce did not answer the plaintiff's complaint but instead accepted a consent decree providing "for virtually all the relief sought," demonstrating a "less than wholehearted[] dedicat[ion] to opposing the [plaintiff's] aims." 966 F.2d at 43. That is plainly not the situation here. *See supra* pp. 40-44.

### 3. Joint Intervenors do not explain how their interests diverge from the federal government's

Joint Intervenors claim that their "parochial" interests diverge from the United States' interests and point to a series of cases in which private parties were entitled to intervene alongside government entities. Joint Br. 48-49. That private parties in *those* cases satisfied Rule 24(a)(2)'s requirements says little about whether Joint Intervenors can do so *here. See Wilderness Soc'y*, 630 F.3d at 1180. Indeed, none of Joint Intervenors' authorities stands for so broad a principle; to hold otherwise would turn the presumption of adequacy on its head. This Court has thus "regularly concluded" that a government entity's representation *is* adequate even where the private party movant "articulate[d] a specific," "narrower" interest. Joint Br. 49; *see, e.g.*, *Geithner*, 644 F.3d at 841-43; *Prete*, 438 F.3d at 957-59; *Drakes Bay Oyster Co.*, 2013 WL 451813, at \*7, *aff'd*, 571 F. App'x 605.

As several of Joint Intervenors' cited authorities recognize, moreover, courts often look to whether the would-be intervenor would offer any necessary or unique

47

elements to the proceedings that the existing parties would otherwise neglect. *Contra* Joint Br. 48 (contending that whether Proposed Intervenors' arguments are "tailored to their specific economic interests" is "irrelevant"). In *Forest Conservation Council v. U.S. Forest Service*, for example, the private party movants would have been bound by the requested injunction and so their views and evidence were relevant to the equitable balancing that would determine the injunction's scope. 66 F.3d 1489, 1496, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173; *see also W. Watersheds Project*, 22 F.4th at 842 (because private party held a contract with the federal government, it would add a necessary due-process element that would otherwise be absent); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 730, 736-37 (D.C. Cir. 2003) (Mongolian government's perspectives were not otherwise represented in suit involving U.S. agency's decision not to list as endangered certain sheep located within Mongolia's borders).

Here, Proposed Intervenors identify no reason why their purportedly unique views would influence the disposition of Plaintiff States' claims or the relief awarded. Specifically, they do not explain why their grievances with the substance of California's emission standards would help the district court decide the question whether the congressional resolutions are constitutional; what unique evidence or expertise they might lend to those predominantly legal issues involving the conduct

48

of two branches of the federal government; or why the United States lacks any relevant expertise. *See Prete*, 438 F.3d at 958. That failing also underscores the risk that Proposed Intervenors will improperly "inject … unrelated issues" into the case. *Arakaki*, 324 F.3d at 1086; *see also supra* pp. 6 n.4, 19-20 & n.9, 22-23. Proposed Intervenors' views are better aired in amicus briefs instead, as the district court determined and allowed. *See Blake*, 554 F.2d at 955 (concluding that movant's purportedly specialized knowledge would not add any necessary element to the suit and could instead be provided by amicus brief); *see also* SER-48–51 (amicus brief by non-movant-intervenor trade associations offering views of EPA waivers' purported impacts on their industry).

### 4. Joint Intervenors can only speculate that the federal government might reverse course in the future

Joint Intervenors argue that the risk of the United States reversing its position rebuts the presumption of adequacy. Joint Br. 51-53. The only data point they cite—that EPA has previously reversed itself on a tiny fraction of its administrative waiver decisions—does not bear out such a risk. First, Joint Intervenors conflate EPA's waiver actions with the congressional resolutions at issue. But the constraints on the United States' defense are distinct. If the U.S. Department of Justice later wishes to refrain from defending the congressional resolutions' constitutionality, it must submit a report to Congress divulging and explaining that

49

decision pursuant to 28 U.S.C. § 530D(a)(1)(B)(ii). No such requirement attaches to reversals on administrative actions (i.e., waiver decisions). Second, Joint Intervenors' example relates to a single waiver—out of more than seventy-five granted over sixty-plus years, *supra* p. 4—and one not targeted by the congressional resolutions. That is far from dispositive of how EPA will act on the targeted waivers, let alone how the U.S. Department of Justice will carry out its defense of the resolutions.

Joint Intervenors contend that the district court's refusal to credit this risk improperly heightened the relevant standard. Joint Br. 52. Not so. It is well settled that speculative, conclusory allegations are inadequate to support intervention. *Berg*, 268 F.3d at 819; *Lucent Techs.*, 642 F.3d at 740. The district court correctly applied that rule when it reasoned that Joint Intervenors' speculative arguments, if accepted, would mean the federal government "could never adequately represent anyone's interests" and would "upend the presumption of adequacy." 1-ER-9. This Court's decisions in *LULAC*, 131 F.3d at 1297, and *Sagebrush Rebellion*, 713 F.2d at 528-29 (cited at Joint Br. 51), stand for the same premise. And although the Court in *Sagebrush Rebellion* ultimately deemed the federal government's representation inadequate, there the change in administration had already occurred and, through staffing changes, undermined the adversarial relationship between the parties. *See* 713 F.2d at 528 (jokingly referring to the case as "*Watt v. Watt*").

50

Joint Intervenors also take issue with the district court's assertion that they could "renew their motions to intervene" as appropriate, arguing that such renewal would come too late. Joint Br. 52 (quoting 1-ER-9). Their supporting citations, however, are off point. In *East Bay Sanctuary Covenant*, the movants had not sought to intervene at the district court, and failed to establish a protectable interest in any event. 102 F.4th at 1001-03 & n.1. And in *Citizens for Balanced Use*, the Court referenced a case in which the agency had already decided not to appeal an adverse decision, and in which other circumstances provided "further reason to doubt" its defense of the challenged rule. 647 F.3d at 899-900. Here, there is no "reason to doubt" the United States' defense of the congressional resolutions. *See id.*; *see also supra* pp. 40-44. To nonetheless conclude that the "mere possibility that the federal defendants *might* decline to appeal" is "sufficient to rebut the presumption of adequacy" would, again, upend that presumption. *Geithner*, 644 F.3d at 842; *see also id.* (observing that "the government typically appeals district court decisions ruling federal statutes unconstitutional"). Finally, even if this eventuality were to occur, post-judgment intervention is typically available so long as the movant satisfies the requirements of both Rule 24(a)(2) and Article III. *See Yniguez v. Arizona*, 939 F.2d 727, 731 (9th Cir. 1991).

51

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED JOINT INTERVENORS PERMISSIVE INTERVENTION

To intervene permissively under Federal Rule of Civil Procedure 24(b), a movant must show that: (1) independent grounds for jurisdiction exist; (2) the motion is timely; and (3) the movant's claim or defense shares a common question of law or fact with the main action. *City of Los Angeles*, 288 F.3d at 403. Even where a movant satisfies those "initial conditions," a court may nonetheless deny permissive intervention based on "other factors," including the movant's "legal position" and its "probable relation to the merits of the case"; "adequate[] represent[ation] by other parties"; and "undue delay." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

This Court reviews denials of permissive intervention for abuse of discretion. *Perry*, 587 F.3d at 955 (absent such finding, Court must dismiss for lack of jurisdiction). Perhaps recognizing that high bar, WSTA Intervenors do not challenge the district court's order on this ground. WSTA Br. 3. Joint Intervenors, for their part, devote a scant two pages to contesting the district court's reasoning. Joint Br. 53-54, 55-56. Their arguments are easily dismissed.

Joint Intervenors fault the district court for premising its denial partly on its findings regarding adequate representation. *Id.* at 54, 56. But that approach is well supported by the case law, and Joint Intervenors cite no case holding otherwise.

*Perry*, 587 F.3d at 955 (quoting *Spangler*, 552 F.2d at 1329). And while Joint Intervenors may disagree with the court's ultimate conclusions, that is not evidence that the district court failed to "correctly appl[y] the law." *Prasad v. INS*, 47 F.3d 336, 340 (9th Cir. 1995).

Joint Intervenors also ignore that the district court based its denial not just on adequate representation but on prejudice, too. *See* Joint Br. 54, 56 (incorrectly asserting that the court "provided limited reasoning" and made "no other findings"). Specifically, the court concluded that, because their asserted interests did not translate into any unique or tailored legal arguments, the participation of an additional twenty-one defendants "would create inefficiencies and unduly delay the case without meaningfully advancing the substance of the matter." 1-ER-9–10. That conclusion rested on several findings, including: (1) the significant overlap between the arguments that proposed defendant-intervenors sought to make and the arguments included in the United States' motion to dismiss; (2) the risk that proposed defendant-intervenors would insert irrelevant issues into the case, such as the legality of EPA's waiver decisions or the costs of California's regulations; and

53

(3) the proposed defendant-intervenors' "reticence" in coordinating their filings and limiting the lengths of their motions and briefs. 1-ER-9–10.[19]

The district court did not abuse its discretion. *See Perry*, 587 F.3d at 956 (reaching the same conclusion where the district court found "that the delay occasioned by intervention outweighed the value added"); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987) (a district court's decision "on how best to balance the rights of the parties against the need to keep the litigation from becoming unmanageable is entitled to great deference"). That the court took care to "ensure an equal opportunity to be heard" by extending the deadline for proposed defendant-intervenors to participate as amici on the United States' motion to dismiss only reinforces that result. *See* 1-ER-11; *cf. Greene*, 996 F.2d at 978; *Blake*, 554 F.2d at 955.

Should the Court nonetheless be inclined to reverse, Plaintiff States respectfully ask that it remand to the district court for reconsideration. *See* Joint Br.

---

[19] Joint Intervenors elsewhere cite *Western Watersheds Project*, 22 F.4th at 839, to suggest that the additional complexity posed by the "addition of interested parties" is "not a basis" for denying intervention. Joint Br. 22. That principle, however, concerns the prejudice inquiry under Rule 24(a)(2)'s timeliness requirement, which is not at issue here. In the context of permissive intervention, the risk that movants might make the litigation "more tangled and complex" is a proper factor for consideration. *See Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978) (holding that the district court acted "well within [its] discretion" when it decided that thirteen additional plaintiffs "would unnecessarily delay and complicate the case").

56 (agreeing Court should remand); SER-74–75 (requesting that the district court impose particular conditions should intervention be granted to reduce prejudice and conserve the court's and parties' resources, and collecting cases).

## CONCLUSION

For the foregoing reasons, Plaintiff States respectfully request that the Court affirm the district court's denial of intervention as of right under Federal Rule of Civil Procedure 24(a)(2), and dismiss Joint Intervenors' appeal of the district court's denial of permissive intervention under Federal Rule of Civil Procedure 24(b) for lack of jurisdiction.

Dated:  March 27, 2026

Respectfully submitted,

 s/ Cecilia D. Segal
 ROB BONTA
*Attorney General of California*
ANNADEL A. ALMENDRAS
*Senior Assistant Attorney General*
MYUNG J. PARK
*Supervising Deputy Attorney General*
CECILIA D. SEGAL
*Deputy Attorney General*

*Attorneys for State of California*

**PHILIP J. WEISER**
*Attorney General for the State of Colorado*

/s/ *Carrie Noteboom*
CARRIE NOTEBOOM
Assistant Deputy Attorney General
Ralph L. Carr Judicial Center
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6285
carrie.noteboom@coag.gov

**KATHLEEN JENNINGS**
*Attorney General of the State of Delaware*

/s/ *Vanessa L. Kassab*
IAN R. LISTON
Director of Impact Litigation
RALPH K. DURSTEIN III
VANESSA L. KASSAB
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

56

**ANDREA JOY CAMPBELL**
*Attorney General for the*
*Commonwealth of Massachusetts*

/s/ Seth Schofield
SETH SCHOFIELD
Senior Appellate Counsel
JON WHITNEY
Special Assistant Attorney General
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place, 18th Flr.
Boston, Mass. 02108
(617) 727-2200
seth.schofield@mass.gov
jon.whitney@mass.gov

**RAÚL TORREZ**
*Attorney General for the State of*
*New Mexico*

/s/ William Grantham
WILLIAM GRANTHAM
Assistant Attorney General
408 Galisteo Street
Santa Fe, New Mexico 87501
 (505) 717-3520
wgrantham@nmdoj.gov

**JENNIFER DAVENPORT**
*Attorney General for the State of*
*New Jersey*

/s/ Lisa Morelli
LISA MORELLI
Deputy Attorney General
Division of Law
25 Market Street, P.O. Box 093
Trenton, NJ 08625
(609) 376-2740
lisa.morelli@law.njoag.gov

**LETITIA JAMES**
*Attorney General for the State of*
*New York*

/s/ Ashley M. Gregor
ASHLEY M. GREGOR
Assistant Attorney General
Environmental Protection Bureau
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8454
ashley.gregor@ag.ny.gov

56

**DAN RAYFIELD**
*Attorney General for the State of Oregon*

*/s/ Paul Garrahan*
PAUL GARRAHAN
Sr. Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

**CHARITY R. CLARK**
*Attorney General for the State of Vermont*

/s/ *Hannah Yindra*
HANNAH YINDRA
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Hannah.Yindra@vermont.gov

**PETER F. NERONHA**
*Attorney General for the State of Rhode Island*

*/s/ Nicholas M. Vaz*
NICHOLAS M. VAZ
Special Assistant Attorney General
Office of the Attorney General
Environment and Energy Unit Chief
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

**NICHOLAS W. BROWN**
*Attorney General for the State of Washington*

*/s/ Alexandria Doolittle*
ALEXANDRIA K. DOOLITTLE
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6769
Alex.Doolittle@atg.wa.gov

OK2025401237
45016929

57

## STATEMENT OF RELATED CASES

Other than the consolidated appeal numbers identified on the caption page of this brief, Plaintiff States are unaware of any other related cases currently pending in this Court.

Plaintiff States disagree with the inclusion of *AmFree v. EPA*, No. 25-89 (and consolidated cases), and *AmFree v. EPA*, No. 25-106 (and consolidated cases), in Joint Intervenors' Statement of Related Cases. To begin, these consolidated appeals involve the district court's denial of several motions to intervene under Federal Rule of Civil Procedure 24. Neither *AmFree* case involves that issue. And even if these intervention appeals could be said to involve arguments related to the validity of the congressional resolutions—the subject of the litigation in the district court below—those arguments are *also* not at issue in the *AmFree* cases. *See supra* p. 24-25 n.10. In sum, the *AmFree* cases are not related to the present appeals. *See* Cir. Rule 28-2.6(b)-(c).

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-8013, 26-88, 26-497, and 26-525

I am the attorney or self-represented party.

**This brief contains** \_\_\_\_12,658_____ **words,** including \_\_0\_\_ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Cecilia D. Segal _____ **Date** March 27, 2026
_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**                                                   *Rev. 12/01/22*