**No. 25-8013**

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF DELAWARE; STATE OF MASSACHUSETTS, Named As Commonwealth of Massachusetts; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF OREGON,

*Plaintiffs - Appellees,*

v.

UNITED STATES OF AMERICA, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, DONALD J. TRUMP,

*Defendants,*

WESTERN STATES TRUCKING ASSOCIATION; CONSTRUCTION INDUSTRY AIR QUALITY COALITION, INC.,

*Movant Intervenor-Defendants – Appellants.*

_____

On Appeal from the U.S. District Court
for the Northern District of California
4:25-cv-04966-HSG; Hon. Haywood S. Gilliam, Jr.

_____

## APPELLANTS' REPLY BRIEF

_____

Robert Henneke
Theodore Hadzi-Antich
Eric Heigis
Laura Elizabeth Latimer
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................iii

INTRODUCTION.......................................................................... 1

ARGUMENT .................................................................................3

I.   WSTA and CIAQC have a legally protected interest in the property or transaction that is the subject of the action.................3

II.  Appellees' requested relief will impede WSTA and CIAQC's interests.......................................................................9

III. Federal Defendants do not adequately represent WSTA and CIAQC because they failed to raise a meritorious argument and have given no indication that they intend to raise it in the future................................................................. 16

CONCLUSION .............................................................................23

CERTIFICATE OF COMPLIANCE..........................................24

CERTIFICATE OF SERVICE..................................................25

# TABLE OF AUTHORITIES

***Cases:***                                                                        ***Page(s):***

*Bond v. United States,*
564 U.S. 211 (2011) ..................................................................... 19

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,*
54 F.4th 1078 (9th Cir. 2022) ........................................................ 3

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
647 F.3d 893 (9th Cir. 2011) ..................................................... 1, 11

*Cty. of Fresno v. Andrus,*
622 F.2d 436 (9th Cir. 1980) ........................................................ 15

*Donnelly v. Glickman,*
159 F.3d 405 (9th Cir. 1998) .......................................................... 7

*E. Bay Sanctuary Covenant v. Biden,*
102 F.4th 996 (9th Cir. 2024) ........................................................ 9

*Greene v. United States,*
996 F.2d 973 (9th Cir. 1993) .............................................. 3, 4, 5, 6

*Idaho Farm Bureau Fed'n v. Babbitt,*
58 F.3d 1392 (9th Cir. 1995) ........................................................ 18

*Jewel v. NSA,*
673 F.3d 902 (9th Cir. 2011) ......................................... 2, 3, 12, 13

*Nuesse v. Camp,*
385 F.2d 694 (D.C. Cir. 1967) ...................................................... 15

*Perry v. Schwarzenegger,*
630 F.3d 898 (9th Cir. 2011) .......................................................... 4

*Prete v. Bradbury,*
438 F.3d 949 (9th Cir. 2006) ........................................................ 22

*S. Cal. Edison Co. v. Lynch,*
307 F.3d 794 (9th Cir. 2002) ................................................... 13, 14

iii

*State ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006) ................................... 2, 12, 16, 17, 18

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ....................................... 11

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004) ..................................... 8, 19

*United States v. City of Los Angeles,*
    288 F.3d 391 (9th Cir. 2002) ............................ 2, 7, 8, 22

*United States v. Metro. St. Louis Sewer Dist.,*
    569 F.3d 829 (8th Cir. 2009) ....................................... 3, 4

*W. Watersheds Project v. Haaland,*
    22 F.4th 828 (9th Cir. 2022) ..................................... 22

*Westlands Water Dist. v. United States,*
    700 F.2d 561 (9th Cir. 1983) ....................................... 14

### *Rules:*

Fed. R. Civ. P.
    12(h)(2) ............................................................... 17
    24(a)(2) ............................................................. 9, 15
    24(b)(3) ............................................................... 15

### *Other Authorities:*

7C Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 1920 (3d ed. 2008).................... 19

Model Rules of Prof'l Conduct,
    r. 1.7(a)(1) (Am. Bar Ass'n 2025)................................... 20

iv

## INTRODUCTION[1]

For at least five reasons, Appellees' Consolidated Answering Brief buckles under the strain of its factual and legal errors. First, in their effort to show that WSTA and CIAQC have no protectible interest in this lawsuit, Appellees neglect the rudimentary legal principle established by this Court that the interest prong of intervention as of right "is guided *primarily* by practical considerations." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (emphasis added). Instead, Appellees try to steer the Court to overlook the obvious automatic effect of invalidating Public Laws 119-15, 119-16, and 119-17, which would immediately impose significant costs on WSTA and CIAQC's members.

Second, Appellees counterfactually assert that WSTA and CIAQC do not seek to intervene to defend Public Laws 119-15, 119-16, and 119-17, but rather, to challenge the original EPA waivers that those laws revoke. Any reasonable reading of their Opening Brief would reveal that WSTA and CIAQC address the waivers solely to show that they meet the interest prong of intervention as of right. This showing was necessary

---

[1] Appellants WSTA and CIAQC filed their Opening Brief on January 15, 2026. The other appellants, to whom the Appellees refer as "Joint Intervenors," did not file their Joint Opening Brief until February 25, 2026. Appellees filed their Consolidated Answering Brief on March 27, 2026, in which they responded to both. Accordingly, WSTA and CIAQC address in this Reply only the arguments raised by Appellees that are relevant to WSTA and CIAQC.

because, as indicated above, granting the relief requested by Appellees would instantaneously subject WSTA and CIAQC to increased costs stemming from the revival of the terminated waivers. WSTA and CIAQC seek to defend the very laws that nullified the waivers. Accordingly, Appellees' assertion that WSTA and CIAQC aspire to intervene in order to directly challenge the waivers themselves is transparently false.

Third, the cases Appellees cite do not support their arguments. Appellees consistently misinterpret this Court's cases and rely on out-of-circuit precedent in their unavailing efforts to create a heightened test that conflicts with this Court's "liberal policy in favor of intervention." *United States v. City of Los Angeles,* 288 F.3d 391, 397 (9th Cir. 2002). Under a close reading, this Court's intervention precedents support WSTA and CIAQC's positions and belie those of Appellees.

Fourth, Appellees (and the district court) ignore the fact that, as a practical matter, WSTA and CIAQC have no other means of protecting their interests than intervening in the instant case. *See State ex rel. Lockyer v. United* States, 450 F.3d 436, 445 (9th Cir. 2006) (reversing and remanding to district court "with instructions that . . . proposed intervenors be made parties to the litigation" where they had "no other means [of] protect[ing] [their] interest[s].").

Fifth, Appellees' argument that allowing WSTA and CIAQC to intervene would open the floodgates of litigation overlooks an authoritative decision of this Court. *Jewel v. NSA,* 673 F.3d 902, 909 (9th

2

Cir. 2011). ("[I]t does not matter how many persons have been injured by the challenged action so long as the party bringing suit…show[s] that the action injures him in a concrete and personal way."). This is precisely the showing that WSTA and CIAQC have made. Opening Br. at 22–29.

Accordingly, the district court erred when it denied WSTA's and CIAQC's motion to intervene as of right, and Appellees' arguments to the contrary are meritless. Because WSTA and CIAQC meet each of Rule 24's requirements for intervention as of right, this Court should reverse.

## ARGUMENT

### I. WSTA and CIAQC have a legally protected interest in the property or transaction that is the subject of the action.

Appellees misstate this Court's precedents on the required relationship between a proposed intervenor's interest and the claims in a case. It is true that there must "exist *a* relationship between the legally protected interest and the claims at issue." *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022) (emphasis added). But Appellees confuse the *nature* of that relationship.

Appellees argue that WSTA and CIAQC must have a direct interest in the separation of powers and federalism claims they bring, not "the follow-on effects should the congressional resolutions be struck down." Appellees' Br. at 19. For this proposition they cite *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829 (8th Cir. 2009), and *Greene v. United*

3

*States*, 996 F.2d 973, 976 (9th Cir. 1993). *See* Appellees' Br. at 16–20. Both cases are inapposite.

*Metro St. Louis Sewer District* differs from the instant case on the law and the facts. There, the Eighth Circuit applied its test for intervention, which requires Article III standing. *Metro. St. Louis Sewer Dist.*, 569 F.3d at 833 ("In our circuit, a party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24."). That case holds no weight in this circuit, where this Court has held "[i]n general, an applicant for intervention need not establish Article III standing to intervene." *Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (per curiam).

Further, in *Metro St. Louis Sewer District,* the intervenor (a business trade organization) sought to intervene as a "neutral party for the limited purpose of participating in 'discussions, negotiations, mediations, hearings, trials and/or settlements' relating to the remedy." 569 F.3d at 833. They argued that, should the defendant sewer district lose the case on the merits, the sewer district may increase user fees on the trade organization's members to cover any civil penalties or additional costs. *Id.* at 834. The Eighth Circuit held that this speculative harm was not sufficient. Even if the *St. Louis Sewer District* case had been decided in this circuit (which it had not), the instant case is readily distinguishable. WSTA and CIAQC do not allege a speculative future injury. Rather, they have shown that, should the plaintiff states succeed

4

in their suit, WSTA and CIAQC's economic interests will immediately suffer – to the tune of $300,000 per truck. *See* Appellants' Br. at 23–25; 2-ER-302.

*Greene* is likewise distinguishable. The main claims in *Greene* challenged the federal government's failure to recognize the Samish tribe. *Greene*, 996 F.2d at 975. A neighboring tribe, the Tulalip, sought intervention, arguing that (1) if the Samish were granted federal tribal status, the Samish could then apply for treaty fishing rights, thereby diluting the Tulalip's treaty fishing allocations, *id.* at 976, and (2) the outcome of the case could have the effect of overturning precedent allocating the Tulalip's treaty fishing rights. *Id.* at 977.

As to the first argument, the Ninth Circuit held that the Tulalip did not establish a protectable interest because, even if the Samish were recognized, that recognition would not change the status of the Tulalip's fishing rights. *Id.* at 976–77. That is because "[f]ederal recognition does not self-execute treaty rights claims." *Id.* at 977. Further, before the Samish could possibly dilute the Tulalip's treaty fishing rights, two separate cases establishing the Tulalip's fishing rights would have to be overturned. *Id.* In other words, fishing rights for the Samish (and diminished rights for the Tulalip) would not automatically flow from a favorable court decision for the Samish.

As to the second asserted interest—the Tulalip's interest in protecting other favorable precedent—the Court recognized that "[wh]ere

the precedential impact has been clear, we have allowed intervention." *Id.* However, the Court pointed out, the precedent that the Tulalip wanted to protect was exclusively tied to the issue of *the Tulalip's fishing rights*, which—as discussed above—could not be directly affected by the outcome of the case regarding federal recognition for the Samish. *Id.* at 978.

Contrast *Greene* with the facts in this case. Appellees argue that "[t]his suit, from start to finish, is about the congressional resolutions' unconstitutionality and their infringement on Plaintiff States' rights." Appellees' Br. at 19. To remedy these alleged violations, Appellees request the court declare the resolutions "unconstitutional, unlawful, void, and of no effect." 2-ER-126 (Appellees' First Amended Complaint). Receiving that relief will automatically revive California's regulations, imposing costs on the end-users of the trucks the ACT Rule regulates. *See* 2-ER-302. Appellees admitted as much in their district court opposition brief: "Plaintiffs' request to have the three waivers declared valid simply follows from a ruling invalidating the Resolutions." SER-067. Invalidating the Resolutions would automatically revive the waivers, thereby immediately imposing costs on WSTA and CIAQC's members. *See Greene*, 996 F.2d at 976. If Appellees receive their requested relief, no intervening action—by a court, Congress, EPA, or anyone else is necessary to impose those costs. Accordingly, unlike in

6

*Greene* and *Metro St. Louis Sewer District*, WSTA and CIAQC's interests are directly impaired by the claims in this case.

Appellees also fail to distinguish this Court's more specific (and more recent) holdings that "[t]he relationship requirement is met 'if the resolution of the plaintiff's claims actually will affect the applicant.'" *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998)). Under that standard, it is virtually impossible to effectively argue that "the resolution of plaintiff's claims"—i.e., reinstating the ACT Rule Waiver— will not "actually will affect the applicant." *Id.* WSTA and CIAQC provided ample evidence of the ACT Rule's effects in their Opening Brief. *See* Appellants' Br. at 23–25 (describing the Rule's $300,000 purchase price increase); 2-ER-302 (declaration describing the same).

Appellees did not contest this evidence. *See* Appellees' Br. at 20 n.9. Instead, they argue WSTA and CIAQC's economic interests are too attenuated to this case's subject matter. Appellees fault WSTA and CIAQC for "assert[ing] diverse economic interests that are allegedly protected by the Clean Air Act and disconnected from the subject of Plaintiff States' challenge: the congressional resolutions." *Id.* at 20. But this Court does not require WSTA and CIAQC's interests to be protected under the laws at issue in the suit. "An applicant seeking to intervene need not show that 'the interest he asserts is one that is protected by statute under which litigation is brought.' It is enough that the interest

7

is protectable under *any* statute." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (emphasis added). For an economic interest, it is enough that the interest is "concrete and related to the underlying subject matter of the action." *Id.* Again, "[t]he relationship requirement is met 'if the resolution of the plaintiff's claims actually will affect the applicant.'" *City of Los Angeles*, 288 F.3d at 398. This Court ultimately denied intervention in *Alisal Water* because it found the movant's "sole interest" in the case, "the prospective collectability of a debt," was "several degrees removed" from the case's subject matter. *Alisal Water Corp.*, 370 F.3d at 919. Those are not the circumstances of WSTA and CIAQC's interests here. This case "actually will affect the applicant" because the negation of the laws at issue here will permit California to enforce regulations that will increase WSTA and CIAQC's members' costs. *City of Los Angeles*, 288 F.3d at 398.

As explained above, WSTA and CIAQC's economic interest is related to the subject matter of the action because granting Appellees' requested relief will automatically reimpose costly regulations. We know exactly the kind of trucks that these regulations require (electric heavy-duty trucks), and we know that these electric trucks sell for $300,000 more than a comparable diesel truck. 2-ER-302. That makes WSTA and CIAQC's interests concrete and related to this suit's subject matter— there is no speculation involved. WSTA and CIAQC thus have "interest

8

relating to the property or transaction that is the subject of the action."
Fed. R. Civ. P. 24(a)(2).[2]

## II.    Appellees' requested relief will impede WSTA and CIAQC's interests.

Appellees assert that this case is not about the merits of EPA's decision to grant a waiver. WSTA and CIAQC agree. This case concerns whether Congress validly enacted Public Laws 119-15, 119-16, and 119-17. WSTA and CIAQC have an interest in preserving Congress and the President's decision to repeal the waivers through bicameralism and presentment. If Appellees win this case, WSTA and CIAQC will suffer harms from the ACT Rule. Accordingly, WSTA and CIAQC's interests would be impaired if they cannot defend Public Laws 119-15, 119-16, and 119-17 in this case.

---

[2]    Appellees also cite *E. Bay Sanctuary Covenant v. Bide*n, 102 F.4th 996 (9th Cir. 2024) as an example of a case in which the movants purported interest was too far removed from the subject matter of the case to support intervention. That case also is inapposite. In *E. Bay Sanctuary Covenant*, the challenge was to the constitutionality of an immigration rule. *Id.* at 1002. The proposed intervenors were states alleging an interest in reducing immigration and "minimizing their expenditures and preserving their population-based political representation." *Id.* The Court held that the states had no interest in reducing immigration, as that is a purely federal interest and that such incidental economic effects on the states were too "attenuated and speculative" to constitute a Rule 24 interest. *Id.* at 1002–03. Here, WSTA and CIAQC represent market participants directly and concretely affected by the outcome of this litigation.

9

This case is the only case directly challenging the validity of Public Laws 119-15, 119-16, and 119-17. Accordingly, this Court stayed (pending resolution of this case) WSTA's merits challenge to the Omnibus Program and a separate merits challenge to the Advanced Clean Cars II Rule.[3] *See H.R. Ewell Inc. v. EPA*, No. 25-1475, Dkt. No. 47 (9th Cir. Feb. 27, 2026); *Am. Free Enter. Chamber of Commerce v. EPA*, No. 25-106 Dkt. No. 58 (9th Cir. Mar. 2, 2026).

Contrary to Appellees suggestion, WSTA and CIAQC cannot protect its interests in a Clean Air Act petition for review. Appellees' success in this case will reimpose costly regulations before the appellate courts can resolve WSTA's merits challenge. Those costs cannot be avoided through participating in any other litigation.

WSTA and CIAQC demonstrated above that they have an interest in this case's subject matter based on the automatic consequences that come from reviving the ACT Rule. WSTA and CIAQC's economic interests in this case may be similar to the economic interests in its ACT

---

[3] WSTA and CIAQC's other merits challenge, *Western States Trucking Ass'n et al. v. EPA*, No. 23-1143 (D.C. Cir.), was already in abeyance when this case was filed. When Public Laws 119-15, 119-16, and 119-17 were signed into law, the Department of Justice attorneys contacted attorneys for the petitioners by phone to determine our position on a motion to dismiss that case as moot. Because WSTA and CIAQC's counsel objected, no motion was ever filed on the docket. These conversations are memorialized in contemporaneous, privileged communications. Counsel can provide these communications for *in camera* review if the Court desires.

Rule merits challenge. But they are not the same. If Appellees win this case, they will be allowed to immediately enforce the ACT Rule. WSTA and CIAQC will still have their merits challenge in the D.C. Circuit, but it could take years to resolve that case. Indeed, even before Congress enacted Public Laws 119-15, 119-16, and 119-17, that case had been in abeyance for 18 months. *See* Appellants' Br. at 21 & n.2. All the while, WSTA and CIAQC felt the impact of rising heavy-duty truck prices beginning in model year 2024. And if the ACT Rule is revived, WSTA and CIAQC will suffer from the regulation's negative effects until their merits challenge is resolved. Even if WSTA and CIAQC eventually win their separate merits challenge, Appellees' success in this case would generate a period of time during which the ACT Rule imposes costs on WSTA and CIAQC. No other proceeding can stop those interim negative effects from occurring. Preventing harm in the interim is just the kind of "practical consideration[]" that this Court weighs when evaluating interests. *Citizens for Balanced Use*, 647 F.3d at 897; *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (proposed intervenor "demonstrates a 'significantly protectable interest' when 'the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon [their] legally protectable interests.'"). The injunction Appellees seek would have the "direct, immediate, and harmful" effect of reimposing costly regulations. *Berg*, 268 F.3d at 818; *see also* 2-ER-126 (Plaintiffs' request for injunctive relief). For this reason, WSTA and

11

CIAQC have an interest in *this case* that would be impaired if they are not allowed to intervene.

Although other movants may or may not feel immediate negative effects from the ACT Rule, WSTA and CIAQC have put forth undisputed evidence that shows how granting the Appellees' requested relief will revive the regulations that Public Laws 119-15, 119-16, and 119-17 declared "have no force or effect." That relief will immediately harm WSTA and CIAQC in a concrete and particularized way. WSTA and CIAQC have thus shown that: (1) their interest in the subject matter of this case will be impeded if their motion to intervene as of right is denied, and (2) they have no other means of protecting their interests. Under these circumstances, binding precedent of this Court requires that WSTA and CIAQC be admitted as parties as of right. *See State ex rel. Lockyer v. United* States, 450 F.3d 436,445 (9th Cir. 2006) (reversing and remanding to district court "with instructions that . . . proposed intervenors be made parties to the litigation" where they had "no other means of protecting [their] interest[s].").

Appellees raise the specter that a large number of parties are affected by the waivers and may in the future seek intervention. But this alone is not a reason to deny intervention as of right.

Government regulations often affect a large population. In these instances, the inquiry is not whether too many people have been affected. *Jewel v. NSA*, 673 F.3d 902, 909 (9th Cir. 2011) ("the fact that a harm is

12

widely shared does not necessarily render it a generalized grievance"). Instead, courts consider whether the specific parties before the court are affected in a concrete and particularized way. "[I]t does not matter how many persons have been injured by the challenged action so long as 'the party bringing suit…show[s] that the action injures him in a concrete and personal way.'" *Id.* Here, WSTA and CIAQC have demonstrated these particularized harms. They submitted an unrebutted declaration explaining that the ACT Rule will increase the purchase price of heavy-duty trucks by $300,000. 2-ER-302. This figure is based on actual sale prices and is particularized to WSTA and CIAQC—whose members use these trucks in the normal course of their business. This establishes a concrete and particularized harm, not a generalized grievance.

The cases Appellees cite on this point are inapposite. The first case, *Southern California Edison Co.*, involved a motion to intervene by "an association of more than 800 companies in the manufacturing and high-technology sectors" seeking to intervene in a case challenging a rate freeze that made selling electricity unprofitable. *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002). The association's only known interests in the case were that "its members are 'an integral part of the California economy' who 'purchase significant quantities of electricity from SoCal Edison.'" *Id.* The Court observed that the purported interests of the association were "undifferentiated" and generalized." *Id.* It did not demonstrate specific harms to members of the movant's association, such

13

as the amount of electricity purchased or increased costs that the case's resolution could cause. *Id.* Contrast those facts with this case, where WSTA and CIAQC have introduced unrebutted evidence that the ACT Rule will increase by $300,000 the purchase price of heavy-duty vehicles that WSTA and CIAQC members use in their businesses. 2-ER-302. That increased purchase price demonstrates a particularized interest that is differentiated from the general public.

The second case, *Westlands Water District*, involved a contract dispute over water delivery. *Westlands Water Dist. v. United States*, 700 F.2d 561, 562 (9th Cir. 1983). Contrary to Appellees' suggestion, this Court did not deny intervention because the intervenor's interests were shared by "a substantial portion of the population of northern California." Appellees' Br. at 38–39 (citing *Westlands Water Dist.*, 700 F.2d at 563). Instead, this Court applied its longstanding precedent denying "intervention as a party in a suit involving rights under *contracts to which it is not a party.*" *Westlands Water Dist.*, 700 F.2d at 563 (emphasis added). Because "it is the contracts and not public policy that are at issue," the non-party intervenors did not have an interest in the contract dispute. *Id.* Here, there is no contract in dispute—only public policy. That is, the public policy as to whether Congress and the President properly repealed the ACT Rule waiver. As explained above, WSTA and CIAQC have an interest in that dispute that is concrete and particularized.

14

Appellees' numbers-based objection is more appropriate to analyzing permissive intervention. Rule 24(b)(3) instructs courts to "consider whether the intervention will unduly delay or prejudice the original parties' rights." Fed. R. Civ. P. 24(b)(3). No such considerations appear in Rule 24(a)(2), and it would be improper to import those considerations into analyzing intervention as of right. The closest requirement this Court has imposed is that intervention should be allowed for "as many apparently concerned persons as is compatible with efficiency and due process." *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). But this standard cuts against the Appellees' numbers-based limitation because it requires allowing intervention for "as many apparently concerned persons as is compatible." *Id.* Notably, this Court has never denied intervention as of right because the number of intervenors was not compatible with efficiency and due process. And Appellees do not argue that allowing WSTA and CIAQC to intervene as of right is incompatible with efficiency or due process. Appellees cannot shut the courthouse doors behind them simply because their case happens to affect more than one person or entity.

15

### III. Federal Defendants do not adequately represent WSTA and CIAQC because they failed to raise a meritorious argument and have given no indication that they intend to raise it in the future.

WSTA and CIAQC can overcome the presumption of adequate representation if they "demonstrate a likelihood that the government will abandon or concede" a potentially meritorious argument. *State ex rel. Lockyer,* 450 F.3d at 444. The government need not explicitly concede or forfeit an argument. It is enough that "the proposed intervenors bring a point of view to the litigation not presented by either the plaintiffs or the defendants." *Id.* at 445.

WSTA and CIAQC's proposed motion to dismiss filed in the district court presents a meritorious argument "not presented by either the plaintiffs or the defendants" that could resolve all of Appellees' claims. *See* 2-ER-038–41. As explained in WSTA and CIAQC's Opening Brief, arguing that EPA's waivers are properly classified as rules defeats all of Plaintiffs' claims for failure to state a claim. Appellants' Br. at 14–16. Despite WSTA and CIAQC making this argument in their proposed motion to dismiss prior to Federal Defendants filing of their motion to dismiss, the Federal Defendants did not raise the argument in their motion. In fact, the Federal Defendants went out of their way to disclaim this argument for the purposes of their motion to dismiss. SER-009 n.1. Accordingly, at least for the purposes of their motion to dismiss, the

16

Federal Defendants have deliberately abandoned the waivers-as-rules argument.[4]

WSTA and CIAQC never argued that the Federal Defendants forever forfeited the waivers-as-rules argument. That is because this case is only at the motion to dismiss stage, and defendants need not raise every failure to state a claim argument in its motion to dismiss. Fed. R. Civ. P. 12(h)(2). But the Federal Defendants admitted in their notice they purposely did not raise this argument. SER-009 n.1. And they have given no indication that they might raise it in the future. *See* U.S. Notice, Dkt. No. 33. Any suggestion that the Federal Defendants will raise the waivers-as-rules argument is pure speculation. That means, as far as this case is concerned, WSTA and CIAQC raising the waivers-as-rules defense is "bring[ing] a point of view to the litigation not presented by either the plaintiffs or the defendants." *Lockyer*, 450 F.3d at 445.

---

[4]    WSTA and CIAQC "demonstrate[d] a likelihood that the government will abandon or concede" the waivers-as-rules argument on the merits. Appellants' Br. at 16–19. WSTA and CIAQC cited the Department of Justice's practice of not bringing broader arguments than are necessary to win and that Federal Defendants are disinclined to trigger the additional procedural requirements that come with a rulemaking. *Id.* WSTA and CIAQC cannot say for certain what Federal Defendants will do—that is why *Lockyer* only requires "demonstrate[ing] a likelihood." *Lockyer*, 450 F.3d at 444. But it is telling that, in resisting WSTA and CIAQC's characterization, the Department of Justice did not express an intent to bring the waivers-as-rules argument in the future. *See* U.S. Notice, Dkt. No. 33.

The Court should not require proposed intervenors to speculate as to all the arguments that the existing parties could make in the future. Such a rule conflicts with Rule 24's requirement for timeliness. This Court favors moving to intervene "before any hearings or rulings on substantive matters." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995). Adopting an adequacy of representation standard that requires proposed intervenors to wait until merits briefing undermines this timeliness requirement. Instead, the district court should look to the arguments that have been made up to the point when it decides the motion to intervene. If no existing party has made a particular meritorious argument by that point, then the court should allow an intervenor to "bring a point of view to the litigation not presented by either the plaintiffs or the defendants." *Lockyer*, 450 F.3d at 445.

The district court erred when it suggested WSTA and CIAQC's arguments must be "tailored to their specific economic interests." 1-ER-009. Appellees go further, arguing that a proposed intervenor does not overcome the presumption of adequate representation if some other party is able to make their argument. Appellees' Br. at 43. These assertions cannot be squared with *Lockyer*. In *Lockyer* this Court held that pro-life doctors could intervene to defend the Weldon Amendment because the federal government offered a limiting construction that did not go as far as the doctors' defense. 450 F.3d at 440. Yet the federal government was

18

"fully able to make" the pro-life doctors' defense. It just chose not to do so. This Court found that the pro-life doctors overcame the presumption of adequate representation by simply "bring[ing] a point of view to the litigation not presented by either the plaintiffs or the defendants." *Id.* at 445. It did not require the pro-life doctors to bring arguments "specific to Proposed Intervenors' alleged interests or views" or those that the federal government is not "fully able to make." *Contra* Appellees' Br. at 43.

Although this Court requires a movant's interests be related to the case's subject matter, *see Alisal Water Corp.*, 370 F.3d at 919, this Court has not limited the *arguments* intervenors are permitted to make. Wright and Miller explain "the intervenor is entitled to litigate fully on the merits once intervention has been granted." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1920 (3d ed. 2008)). Just as "[a]n individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement of those laws causes injury," *Bond v. United States*, 564 U.S. 211, 222 (2011), an individual can also defend a governmental action as constitutional when overturning the law would cause it injury. Because invalidating Public Laws 119-15, 119-16, and 119-17 on constitutional grounds would impose costs on WSTA and CIAQC, it may as an intervenor offer any non-frivolous argument to defend the laws. As long as its interests are related to the case's subject matter, an intervenor is not limited in the actual arguments it may

advance simply because another party *could* make the same argument. The district court and Appellees' suggestion to the contrary should be rejected.

Appellees also suggest that the Federal Defendants can adequately represent WSTA and CIAQC—despite being adverse parties in a case challenging the ACT Rule Waiver's merits. This is more than parties "find[ing] themselves on different sides of the 'v' from the federal government." *See* Appellees' Br. at 45. The fact that they are adverse parties in connection with the ACT waiver is a conflict of interest that shows one cannot represent the other. Consider what would happen if the Federal Defendants had to "adequately represent" WSTA and CIAQC, essentially acting as their unretained counsel. The American Bar Association's Model Rules of Professional Conduct define a concurrent conflict of interests as when "the representation of one client will be directly adverse to another client." Model Rules of Prof'l Conduct r. 1.7(a)(1) (Am. Bar Ass'n 2025). The comments to the rule explain that "the client on whose behalf the adverse representation is undertaken reasonably may fear that the lawyer will pursue that client's case less effectively out of deference to the other client." Id. at r. 1.7 cmt. 6.

There is clearly a concurrent conflict of interest here. The same fear expressed in the comment is present here, where the Federal Defendants must defer to the federal government's institutional interests and thus will pursue WSTA and CIAQC's interests less effectively. The ABA's

Model Rules bar counsel for the Federal Defendants from representing WSTA and CIAQC as attorneys. It makes little sense to bar Federal Defendants' counsel from representing WSTA and CIAQC as attorneys, yet hold that the same counsel is competent to represent WSTA and CIAQC's interests in this litigation.

Although the Advanced Clean Truck waiver's merits are not at issue in this case, WSTA and CIAQC have ample reason to be concerned that the Federal Defendants will offer a less than full-throated defense of Public Laws 119-15, 119-16, and 119-17. As explained above and in the Opening Brief, the Federal Defendants have incentives to not make the waivers-as-rules arguments so as to not impose upon themselves additional procedural requirements and open up new avenues for WSTA and CIAQC to challenge other waivers.[5] WSTA and CIAQC should not have to rely upon a party they are suing to represent their interests in a related case.

Finally, Appellees attempt to defeat intervention by chiding WSTA and CIAQC for not participating as an amicus. But Rule 24 does not offer a choice between participating as an intervenor and participating as an amicus curiae. Participation as an amicus is simply irrelevant to whether

---

[5] Appellees assert that "WSTA and CIAQC have not presented their waivers-are-rules argument in their challenge to the Advanced Clean Trucks ACT waiver." Appellees' Br. at 45. But Appellee's neglect to add that the D.C. Circuit put the ACT case in abeyance *before* briefing was completed. Accordingly, the rule/adjudication issue is alive in the ACT case. *See Western States Trucking Assn. v. EPA*, No. 23-1143 (D.C. Cir.).

a proposed intervenor has shown timeliness, a significantly protectable interest that will be impaired absent intervention, and that no party adequately represents the proposed intervenor's interest. *See W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (explaining test for intervention as of right). Contrary to Appellees' suggestion, *City of Los Angeles* does not require courts to consider participation as an amicus as part of Rule 24's impairment prong. *See* Appellees' Br. at 44. If anything, *City of Los Angeles* stands for the proposition that it is inappropriate to grant only amicus participation to a party that meets Rule 24's requirements for intervention. 288 F.3d at 400. Furthermore, *Prete v. Bradbury* is irrelevant. There, the court held that *granting* intervention was harmless error because it did not affect the substantial rights of the parties. *See* 438 F.3d 949, 959–60 (9th Cir. 2006). Here, by contrast, WSTA and CIAQC seek to reverse the district court's decision to *deny* intervention because, as shown above, their substantial rights are affected by the denial. Appellees' attempts to divert the issue into amicus territory are unavailing.

In sum, the Federal Defendants do not adequately represent WSTA and CIAQC. The Federal Defendants intentionally refused to bring the meritorious waivers-as-rules argument in their motion to dismiss and have given no indication that they will raise this argument in the future. WSTA and CIAQC have shown a likelihood that the Federal Defendants will not raise this argument in the future. Additionally, the Federal

22

Defendants' status as an adverse party in a related case presents a conflict of interest that defeats adequate representation. Accordingly, WSTA and CIAQC have overcome the presumption of adequate representation.

## CONCLUSION

For the foregoing reasons, WSTA and CIAQC respectfully request this Court reverse the district court and allow them to intervene as of right.

DATE: April 16, 2026  Respectfully submitted,

*/s/Theodore Hadzi-Antich*
ROBERT HENNEKE
THEODORE HADZI-ANTICH
tha@texaspolicy.com
ERIC HEIGIS
eheigis@texaspolicy.com
LAURA ELIZABETH LATIMER
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:(512) 472-2700
Facsimile: (512) 472-2728
*Attorneys for Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-8013

I am the attorney or self-represented party.

**This brief contains** 5,497 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/Theodore Hadzi-Antich **Date** 4/16/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

24

25

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, I electronically filed the foregoing with the Clerk of the Court for the Ninth Circuit Court of Appeals by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/Theodore Hadzi-Antich*
THEODORE HADZI-ANTICH